## FEDERAL LAND BANK OF NEW ORLEANS *et al. v.* LEFLORE COUNTY *et al.*

(Division A. April 9, 1934.)

[153 So. 882. No. 30881.]

**Alfred Stoner,** of Greenwood, for appellants.

4

Paul D. Montjoy, Jr., and W. H. Montjoy, both of Greenwood, for appellee, W. P. Keesler.

Means Johnston, of Greenwood, for other appellees.

**Cook, J.**, delivered the opinion of the court.

On the 2nd day of January, 1925, S. R. Keesler and his wife executed their promissory note in favor of the appellant Federal Land Bank, evidencing the sum of twenty-five thousand dollars, secured by a deed of trust of that date on about two thousand one hundred acres of land in Carroll county, upon which there was growing a large quantity of merchantable timber, the said deed of trust being duly recorded in Carroll county. The indebtedness secured by this deed of trust was not paid, and it was foreclosed on the 5th day of October, 1931,

the deficiency remaining due after the foreclosure being twelve thousand four hundred eighty-one dollars and two cents.

After the foreclosure, the said Federal Land Bank and Alfred Stoner, as trustee for its benefit, brought suit in the chancery court of Leflore county for this deficiency against S. R. Keesler and his wife, and for conversion of timber from the mortgaged premises against Leflore county, and numerous individuals who had purchased lumber and timber from the mortgaged premises, and for discovery of the amount of timber so cut and removed by each defendant. The defendants S. R. Keesler and his wife, Mrs. Lottie P. Keesler, made no defense to the suit, and a decree was entered against them for the sum sued for. As against the defendants S. I. Brown, Z. L. Parker, A. L. Parker, and W. H. Farish, decree was entered for the value of the timber bought and removed by them from the mortgaged premises, while a nonsuit was entered as to B. C. Dacus. As to the defendant Louis Mathis, recovery was denied on the ground that he had no notice, actual or constructive, of the existence of a lien on logs purchased by him, which were removed from the mortgaged premises by his vendors. Recovery against W. P. Keesler, a son of the said S. R. Keesler, and against Leflore county was denied, and from the decree dismissing the bill as to the said Louis Mathis, W. P. Keesler, and Leflore county, this appeal was prosecuted.

After demurrers of the several appellees were overruled, each of them filed separate answers. The answer of Louis Mathis disclosed that he purchased logs from certain other defendants to the bill, the stumpage value of which he withheld and paid to S. R. Keesler, but denied that he had any knowledge or notice that the logs so purchased by him came off of lands owned by S. R. Keesler, or that they came from mortgaged lands, or were subject to any lien in favor of appellant.

The answer of Leflore county disclosed the purchase

from the Wade Lumber Company of lumber of the value of approximately twenty-eight thousand dollars, as shown by orders or allowances appearing on the minutes of the board of supervisors. Itemized statements of bills upon which these allowances were based were filed with the answer, but it was charged that these orders were fraudulent and void. The bill charged that these orders were entered on the minutes of the board of supervisors under the direction of S. R. Keesler, who was then president of the board; that the accounts upon which they purported to be based were never considered by the board in session; that none of the lumber mentioned in the accounts was purchased by advertisement on orders entered on the minutes; that all of said alleged purchases made by S. R. Keesler were made without the knowledge or consent of the other members of the board; that none of the various itemized statements of the Wade Lumber Company were ever filed with the clerk of the board prior to its regular meetings, but were filed after the board had adjourned, and while the minutes were being prepared by the clerk to be signed by the said Keesler, president of the board; that none of the itemized statements of the said lumber company against Leflore county were ever submitted to the attorney of the board for approval of the legality of the same; that none of said bills of the Wade Lumber Company were ever heard and considered by the board in term time; that all of the said statements against the county for lumber were entered on the claim docket after the board adjourned, but before the minutes were signed by the president; and that all warrants issued in favor of the said Wade Lumber Company were illegal and without authority of law.

In explanation of the manner in which the alleged fraud was consummated, the answer charged that immediately after the board adjourned its regular meetings, the said Keesler, its president, stamped the bills for lumber "approved," as other bills which were con-

sidered and approved in open session were stamped; that after the adjournment of the board, and while the minutes of its meetings were being prepared, the said Keesler turned over the said bills of the Wade Lumber Company, stamped "approved," to the clerk or his deputies, representing that said bills were regular and had been duly allowed and should be entered on the minutes and paid as other duly allowed claims; that the other members of the board did not know that S. R. Keesler was connected with the Wade Lumber Company, or that he operated a sawmill on lands owned by him and mortgaged to appellants; that the other members of the board were entirely ignorant of the fact that the Wade Lumber Company was selling lumber to the county; that none of the members, including Keesler, ever voted for the payment of any one of the said bills in regular meetings of the board or otherwise; and that if any of the lumber alleged to have been purchased from the Wade Lumber Company, for which warrants were issued, was lumber sawed from logs which came off of the land of S. R. Keesler, none of the other members of the board were aware of that fact.

The answer further charged that all of the lumber shown on the bills alleged to have been purchased from the Wade Lumber Company for bridge purposes was of a kind, character, and grade wholly unfit for that purpose; that the prices charged on said bills were grossly in excess of the prevailing market prices of such lumber; that many of the statements were incorrect in that the totals shown thereon were grossly in excess of the true amount that would have been shown by correct addition of the items thereon; and that all of said alleged sales of lumber were therefore unlawful and illegal and could not be ratified. The answer further denied that any of the said lumber was used by the county for bridge purposes, or for any other public purpose, and denied that the county had appropriated any of said lumber for public use.

The evidence established the fact that the name Wade Lumber Company was a mere trade-name under which a sawmill located on the mortgaged lands was operated by the said S. R. Keesler, and that he was the sole owner of this sawmill. As to the alleged dealings of the Wade Lumber Company with the county, the testimony is voluminous, and it would serve no good purpose to here detail the testimony of the many witnesses. It will suffice to say that this testimony, which was uncontradicted, establishes the averments of the answer as to the fraud, showing the perpetration of fraud upon the county as monumental and glaring as could well be imagined. There was some oral evidence to the effect that the said S. R. Keesler was in charge of the county bridge crew and the construction of bridges throughout the county. His authority so to do was not otherwise shown.

The effect of the evidence offered to show the fraudulent acts of the president of the board in his dealings with the county, and in fraudulently securing county warrants purporting to be in payment for lumber sold to and used by the county, was not to contradict the true minutes of the board, but to show that these mintutes, as they were drawn up and then appeared, in reference to the matters in question were not the true minutes of the board, and for such purpose the parol evidence was admissible. A judgment or order procured by fraud may be attacked directly or collaterally, and the orders here in question, which were procured to be entered on the minutes of the board of supervisors by fraud as palpable and gross as if they had been entirely forged, can have no sanctity whatever. Hammond-Gregg Co. v. Bradley, 119 Miss. 72, 80 So. 489. The evidence shows that all the dealings of S. R. Keesler, in the name of the Wade Lumber Company, with the county were wholly unauthorized and fraudulent, and in the case of Stephens. v. Drainage District, 123 Miss. 884, 86 So. 641, it was held that section 17 of our state Constitution "has no

bearing on the liability vel non of a corporation for the unauthorized acts of its officers and agents, which liability must still be determined by the rules of the common law as modified by statute,'' and that ''in the absence of a valid statute imposing liability therefor, a public corporation created in invitum for the purpose of discharging a public function is not liable for the negligence of its officers, agents, or employees. Brabham v. Board of Supervisors, 54 Miss. 363, 28 Am. Rep. 352; Nugent v. Board of Levee Commissioners, 58 Miss. 197.'' Under this doctrine liability of the county is not created by reason of the negligence of other members of the board in failing to discover and prevent the unlawful, unauthorized, and fraudulent acts of Keesler, if they were in fact negligent in that respect. In view of this rule, which is thoroughly established in this state, we do not think the unlawful, unauthorized, and fraudulent acts of this officer and agent of the county created any liability on its part to pay for any lumber received as a result of such acts.

As to W. P. Keesler, we think the averments of the bill of complaint, and the proof, are too vague and indefinite to warrant a recovery, therefore the decree of the court below denying recovery as against the said Keesler and Leflore county will be affirmed.

As to Louis Mathis, two questions arise on the record, first, Did the appellants have such title or right of possession as would enable them to maintain this action for conversion? and, second, Did the appellee Mathis have notice, actual or constructive, of the existence of the lien in favor of appellants?

The deed of trust contained an express covenant against the commission of waste, and authorized foreclosure by the beneficiary upon the breach of any of the agreements, conditions, or obligations thereof. Upon the breach of the covenant against waste, the title was vested in the trustee, who was a party complainant herein, and as said in Elson v. Barrier, 56 Miss. 394,

"a deed of trust confers title to the property embraced in it; and, after condition broken, the grantee can maintain assumpsit, or any other action in respect to such property that an owner could maintain on account of his property."

"Where a deed of trust on personal property is recorded in one county, and the grantor removes the property into another county and sells it, the rights of the beneficiary are protected by section 2305 of the Revised Code of 1871 (now section 2142, Code of 1930); and, as therein provided, the buyer is chargeable with full legal notice of the deed, and the rights which it confers." Elson v. Barrier, supra. In construing the said section 2142 in the case of Cole-McIntyre-Norfleet Co. v. Du Bard, 135 Miss. 20, 99 So. 474, the court held that "the mortgagee in a trust deed is not required to record his mortgage in the county where the mortgaged personal property has been removed to, unless he consented and permitted such removal."

The appellants herein did not consent to the removal of the logs from Carroll county, nor the sale thereof, and the record of the deed of trust in Carroll county constituted constructive notice to buyers of the logs, which protected the rights of the beneficiary conferred thereby.

The appellants only seek a decree here for the stumpage value of the logs purchased by Mathis, which was paid to Keesler, and the answer of Mathis to the bill of complaint definitely fixes that amount at one thousand one hundrew twenty-five dollars and ninety-one cents. As against the said Louis Mathis, the decree of the court below will therefore be reversed, and decree will be entered here for the sum above stated.

Affirmed in part and reversed in part.