INZER, Justice:
This is an action for trover and conversion brought in the Circuit Court of Leflore County by appellee, Euclid Memphis Sales, a division of Trippeer Organizations, Inc., a Tennessee corporation, hereinafter referred to as Euclid, against Strib-ling Brothers Corporation, a Mississippi corporation, hereinafter referred to as Stribling, for the conversion by Stribling of two used tractors which were the subject *240 of a chattel mortgage owned at the time of the suit by Euclid. Upon motion by Strib-ling the suit was transferred to the Chancery Court of Leflore County. That court on the trial of the case held that Stribling was guilty of conversion of both tractors and a money judgment was entered against Stribling in the amount of $8,500 plus legal interest. From this decree Stribling appealed. We affirm.
The facts in this case are somewhat involved and we will reduce them insofar as possible to the basic essentials. It is admitted that on November 6, 1963, Euclid sold to Kyle and Hocutt a partnership doing business in Sunflower County, Mississippi, a new Euclid C-6 Tractor and equipment. To secure the purchase price Kyle and Hocutt executed a note and conditional sales contract in the amount of $48,531.59 payable in installments. As additional security Kyle and Hocutt gave a chattel mortgage on two Caterpillar tractors hereinafter referred to as Tractor 9-U1 and Tractor 9-U2. These tractors were owned by Kyle and Hocutt and were located in Sunflower County, Mississippi.
On November 13, 1963, Euclid assigned without recourse the note and collateral to U. M. and M. Credit Corporation doing business in Memphis, Tennessee, hereinafter referred to as Credit Corporation. It was agreed between the parties that Credit Corporation would hold back $10,000 of the purchase price of the note, this was in effect a guaranty that Kyle and Hocutt would pay their note. On November 14, 1963 Credit Corporation duly filed for record in the office of the Chancery Clerk of Sunflower County the conditional sales contract which appellant admits had the effect of a chattel mortgage on the two tractors put up by Kyle and Hocutt as collateral.
In December 1964 Kyle and Hocutt sold without the knowledge or consent of Euclid or Credit Corporation the tractors 9-U1 and 9-U2 to W. B. Harpole, who carried them to Oktibbeha County. On September 21, 1965, Harpole traded tractor 9-U1 to appellant Stribling. Stribling made no inquiry of Harpole relative to his title to the tractor, nor did it make any search of the records.
On January 7, 1966, Kyle and Hocutt transferred and sold the Euclid tractor to Dubose of Sunflower County; this sale was with the knowledge and consent of Credit Corporation and Euclid. The transfer purported to transfer not only the Euclid tractor but also tractor 9-U1 and 9-U2. Dubose assumed the indebtedness to credit corporation but the Credit Corporation did not release Kyle and Hocutt. This assignment and assumption was immediately filed for record and recorded in Leflore County.
On March 23, 1966, Stribling sold tractor 9-U1 to Gerald Tillman for $13,000. Strib-ling took a security instrument on the tractor for its purchase price. A few days later Stribling assigned this note and collateral to Credit Corporation with recourse. Four days later Credit Corporation discovered that this was one of the tractors covered by Kyle and Hocutt’s chattel mortgage. It immediately notified Stribling of this fact. Tillman paid Credit Corporation ■two installments on his note and then defaulted. Credit Corporation required Strib-ling to repurchase this paper. Stribling then repossessed the tractor.
After Credit Corporation found out that Kyle and Hocutt had disposed of the two tractors it contacted them and demanded payment in full of the balance due on their debt, it then being in default. Credit Corporation then knew that neither Kyle, Ho-cutt or Dubose had possession of the tractors 9-U1 and 9-U2. Then it began •proceedings to replevin the Euclid tractor then in possession of Dubose. On June 24, 1966, Credit Corporation wrote Euclid that it was attempting settlement of the suit against Dubose and it could get $17,905 for the Euclid tractor and that it would take this amount and this, together with the $10,000 withheld by it, would pay in full the amount due Credit Corporation. Euclid replied to this letter stating that such action by Credit Corporation would be considered by Euclid *241 to be a breach of the agreement relative to the holdback of $10,000. Euclid contended that Credit Corporation could not apply the $10,000 until it had exhausted all of its security. On September 21, 1966, Credit Corporation accepted $17,000 from Dubose and released the Euclid tractor to him. On November 10, 1966, Credit Corporation applied the $10,000 of Euclid under the hold-back agreement on its books so as to pay itself in full. On November 22, 1966, Euclid filed suit against Credit Corporation in the Chancery Court of Shelby County, Tennessee, on the grounds that Credit Corporation had no right to apply the $10,-000 without first having repossessed tractors 9-U1 and 9-U2 and applied the proceeds to the indebtedness of Kyle and Ho-cutt.
On November 17, 1966, W. B. Harpole traded tractor 9-U2 to Stribling, although Stribling had knowledge that there was a lien on the other tractor Harpole had sold it, made no inquiry relative to the title to this tractor and did not ask Harpole where he had acquired the tractor.
The manager of Stribling admitted that at the time Stribling made this trade with Harpole that it knew that the previous tractor it had purchased from Harpole had a claimed lien on it to Euclid and Credit Corporation. Stribling also knew of the transfer and assumption agreement between Kyle and Hocutt and Dubose, knew of the litigation between Euclid and Credit Corporation, and further knew that there were two tractors on the chattel deed of trust held by Euclid and that Stribling had purchased one of those tractors from Har-pole.
On May 29, 1967, Stribling sold tractor 9-U2 to Harold Coleman and on November 13, 1967, Stribling sold tractor 9 — U1 to Olen Dixon.
The Chancery Court of Shelby County, Tennessee, construed the agreement between Euclid and Credit Corporation to be an absolute guaranty by Euclid and that Credit Corporation had a right to apply this sum to the indebtedness of Kyle and Hocutt in their discretion. The Court further held that Euclid, having paid $10,000 of Kyle and Hocutt’s indebtedness, was entitled to be subrogated to all rights of Credit Corporation, and directed that Credit Corporation assign the note and collateral to Euclid.
Euclid then made demand upon Stribling for payment of the fair market value of the two tractors, claiming that Stribling was liable for conversion of the tractors. Strib-ling denied any liability and Euclid filed this suit.
The first assignment of error is that the trial court erred in finding that appellant was guilty of conversion of the two tractors because the findings were contrary to the law and to the evidence in this case. Under this assignment appellant argues several propositions. It is first contended that the chancellor was in error in failing to hold that the application of the' $10,000 holdback satisfied the debt to Credit Corporation and released all obligors on the note. We find no merit in this contention. The chancellor correctly held that the last $10,000 of the indebtedness of Kyle and Hocutt had not been paid and that the application of Euclid’s $10,000 to satisfy the amount due Credit Corporation was clearly not intended to satisfy Kyle and Hocutt’s debt. What actually happened was that Euclid as guarantor paid to Credit Corporation the last $10,000 that Kyle and Hocutt owed to Credit Corporation on their note and under these circumstances Euclid was entitled to be subrogated to all rights of the holder of the note and the security. We are unable to see how the application of this $10,000 holdback to the indebtedness due Credit Corporation constituted a payment by Kyle and Hocutt. The books of Credit Corporation showed that insofar as is was concerned its indebtedness was paid in full but this did not release Kyle and Hocutt from their obligation on the promissory note. Payment by a guarantor of another’s indebtedness does not extinguish the obligation of the debtor to pay according to *242 his agreement. This rule is well stated in 38 Am.Jur.2d Guaranty § 127 (1968) at 1135, 1136.
The doctrine of subrogation may he invoked by the guarantor where the principal debtor has defaulted in the payment or performance of his obligation and the creditor has enforced the contract of guaranty. In this situation, the guarantor is substituted in place of the creditor and is entitled to assert any rights that the latter may have had by way of proceeding against the debtor or by resort to security. The debtor’s obligation to pay the debt is, therefore, not extin- ' guished by the guarantor’s payment thereof. However, even though the guarantor has taken an assignment of the obligation, he can recover from the principal only the amount which he paid for the obligation.
See also Buckley v. Guilbert, 250 Miss. 240, 164 So.2d 743 (1964).
Appellant next contends that the chancellor was in error in holding that Stribling was guilty of conversion. Appellant argues that there was no conversion because under the rule announced in Mississippi Motor Finance v. Thomas, 246 Miss. 14, 149 So.2d 20 (1963), to the effect “the mere purchase of personal property in good faith from a person who had no right to sell it, is not a conversion.” The above cited case is clearly distinguishable. The quote above set out was taken from 89 C.J.S. Trover and Conversion § 45b (1955). A reading of this section in its entirety reveals that this section applies only in cases where the purchaser acquires the property without any notice, actual or constructive, of the title of the lawful owner. Here appellant was charged with constructive notice of the lien of Credit Corporation when it purchased the tractors. The rule is as stated in Federal Land Bank of New Orleans v. Leflore County, 170 Miss. 1, 153 So. 882 (1934), and is as follows:
“Where a deed of trust on personal property is recorded in one county, and the grantor removes the property into another county and sells it, the rights of the beneficiary are protected by section 2305 of the Revised Code of 1871 (now section 2142, Code of 1930); and, as therein provided, the buyer is chargeable with full legal notice of the deed, and the rights which it confers.” Elson v. Barrier, supra. In construing the said section 2142 in the case of Cole-McIntyre-Norfleet Co. v. Du Bard, 135 Miss. 20, 99 So. 474, the court held that “the mortgagee in a trust deed is not required to record his mortgage in the county where the mortgaged personal property has been removed to, unless he consented and permitted such removal.”
The appellants herein did not consent to the removal of the logs from Carroll County, nor the sale thereof, and the record of the deed of trust in Carroll County constituted constructive notice to buyers of the logs, which protected the rights of the beneficiary conferred thereby. (170 Miss, at 14, 153 So. at 885).
There was no consent by either Credit Corporation or Euclid to the sale or removal of the mortgaged property in this case.
The chancellor was correct in holding that under the facts and circumstances of this case no demand for the return of the tractor and refusal by Stribling was necessary. Stribling had constructive notice of the lien when it purchased the two tractors in question. It had actual knowledge of Credit Corporation’s lien on tractors 9-U1 then again sold this tractor dealing with it as its own. We find no merit in Stribling’s contention that Credit Corporation’s action relative to this tractor amounted to a ratification and consent to Stribling’s acquisition of the tractor. Stribling did assume that Credit Corporation’s actions constituted a ratification of the wrongful sale by Kyle and Hocutt and its subsequent purchase by Stribling, but such assumption was not justified. The fact that Credit Corporation did not demand that Stribling turn tractor 9-U1 over *243 to it and allowed it to remain in Stribling’s possession did not affect its lien on the tractor. Its lien was recorded and it was constructive notice to anyone dealing with the tractor to Credit Corporation’s right. The chancellor was correct in holding that Stribling was liable for a conversion of this tractor.
Appellant’s second assignment of error is that the trial court erred in the matter of law in awarding a money judgment to appellant and denying appellant’s defense of waiver and estoppel against Credit Corporation and against Euclid. The chancellor in discussing the question of waiver and estoppel said:
As to tractor No. 9U2701, acquired by Defendant in November 1966, the question is more difficult. There are some elements of an estoppel against U. M. & M. From and after April of 1966 U. M. & M. knew that both tractors had been sold by Kyle to Harpole; that Har-pole still had and was claiming title to the second tractor, No. 9U2701; that Har-pole apparently did not know of U. M. & M.’s claim; that he had already sold one tractor to an unsuspecting third party and there was every possibility that he would sell or trade the second tractor similarly. Knowing all this, U. M. & M. fiiled to advise Harpole of its claim, even though its representative was in contact with him. On the other hand, both Harpole and Defendant Stribling were negligent in failing to make inquiries and examine records; there was no positive misrepresentation by U. M. & M. nor any fraudulent intent whatsoever; and there was at all times such recording of the conditional sales contract as to constitute constructive notice, on which U. M. & M. was entitled to rely. Under all these circumstances, it is my opinion that estoppel does not lie against U. M. & M. and hence not against its successor Euclid, and Defendant Stribling is also liable for conversion of the second tractor.
Since Credit Corporation’s lien was of record it had a right to remain silent. We said in Davis v. Butler, 128 Miss. 847, 91 So. 279 (1922) that:
Neither has Davis done anything to estop him from asserting his lien. After the sale to Whittington he at no time agreed to relinquish the lien on the timber. He had no conversation with Butler about it between his sale to Whit-tington and Whittington’s sale to Butler. When Butler bought, Whittington’s deed was of record, and he is therefore charged with notice of this vendor’s lien upon the timber at the time of his purchase. With this deed of record he had a. right to be silent. His vendor’s .lien was indisputable and the world had notice of it. There is nothing in the testimony to show that he did anything to mislead or deceive either Butler or Whittington. Neither did he induce Butler to purchase the timber. Sulphine v. Dunbar, 55 Miss. 255, Staton v. Bryant, 55 Miss. 261; Murphy v. Jackson, 69 Miss. [403], 409, 13 So. 728.
As stated in the opinion of the court in the case of Hart v. Livermore Foundry & Machine Co., 72 Miss. [809] bottom of page 830, 17 So. 769:
“Estoppel operates only in favor of one who, in reliance upon the act, representation or silence of another, so changes his situation as that injury would result if the truth were shown.”
There were no acts or representations; neither could Butler in any way have' been misled by the silence of Davis in the purchase of this timber. On the contrary, there was a vendor’s lien staring him in the face, of which he is charged with notice when he purchased. (128 Miss, at 852, 853, 91 So. at 280, 281).
The real reasons Stribling found itself in this unfavorable position is that it failed to exercise diligence to ascertain the facts concerning the title of Harpole to the two tractors here in question.' Of course, Har- *244 pole was likewise negligent in that he failed to examine the records to ascertain whether there were any liens against the tractors before he purchased them. The proximate cause of Stribling’s injury was not the conduct of Credit Corporation but its own negligence. It took a calculated business risk and cannot now be heard to complain.
After a careful consideration of all errors assigned and argued, we are of the opinion that they are without merit and the decree of the chancery court is in keeping with the law and the evidence and for this reason, it is affirmed.
Affirmed.
GILLESPIE, P. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.