530 So.2d 163 (1988)
Peter K. ATKINSON and Norma A. Atkinson
v.
NATIONAL BANK OF COMMERCE OF MISSISSIPPI.
No. 57738.
Supreme Court of Mississippi.
August 3, 1988.
Barry J. Walker, Roy O. Parker & Associates, Tupelo, for appellants.
Ralph E. Rood, Gholson, Hicks & Nichols, Columbus, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This action arises from a failed business venture. The debtors complain that upon consent sale of a Chevrolet van used as collateral, the bank misapplied and converted a part of the proceeds. The bank counterclaimed on an unpaid note given for a loan for operating capital. The circuit court summarily resolved all issues in favor of the bank. Though the matter is not quite so simple as the bank would have one think, we affirm.

II.
In 1982 Peter K. Atkinson and Norma A. Atkinson were operating a business in Amory, Mississippi, known as Park Hotel and Restaurant. In July of 1982 the Atkinsons were in need of operating funds and approached National Bank of Commerce of Mississippi ("NBC" or "the bank"). Apparently, the Atkinsons had a prior banking connection with NBC.
As evidence of a loan for operating capital the Atkinsons on July 29, 1982, gave *164 NBC a note in the principal sum of $20,691.92 calling for payments in eleven monthly installments of $1,300.00 each, beginning September 1, 1982 with a final balloon payment of $8,792.47. This note provided that NBC would have a security interest in any money at any time in possession of the bank and belonging to the Atkinsons. The note further provided that NBC could, at its option, in the event of default, set off any monies belonging to the Atkinsons held by the bank against the note or any obligation of the Atkinsons. See Deposit Guaranty National Bank v. B.N. Simrall & Son, 524 So.2d 295, 299-300 (Miss. 1987). In addition, as evidence of sums advanced to enable the Atkinsons to meet their accounts payable, they gave NBC a second note, this one in the principal sum of $1,077.82 payable on or before October 27, 1982. This note was secured by a 1979 Chevrolet van.
Six months prior to all of this, NBC had procured a continuing guaranty executed January 22, 1982 by Scribner Equipment Company, Inc., wherein Scribner guaranteed payment not to exceed $20,000 regarding the debts of Pete and Norma Atkinson. We sense that the record does not reveal all that is to be told regarding the facts and circumstances of this guaranty.
As fate would have it, the Atkinsons closed the doors of their business at the Park Hotel and Restaurant in October of 1982. Quite apparently the Atkinsons had fallen into arrears in their obligations under the $20,000 note. At some point  the date is not clear from the record  there were discussions between the Atkinsons and the bank to the effect that "the dates had been changed [extended]", provided the Atkinsons would pay the interest which was approximately $689.00.
What is clear is that on January 6, 1983 the Atkinsons sold the 1979 Chevrolet van to H.G. Swanson. Swanson paid $3,200.00 and received a lien free title. The bank handled all disbursements. Out of the proceeds of the sale, the bank applied $1,143.00 to retire in full the note which had been secured by the van. The bank then delivered a check for $1,000.00 to the Atkinsons and paid the balance, some $1,057.00, to Scribner Equipment Company, Inc. The record does not reflect that the interest payment of $689.00 was made. At this moment, apparently, the Atkinsons had funds with which to make that payment.
What appears to have triggered this lawsuit was the fact that the bank gave Scribner part of the money instead of delivering to the Atkinsons the full $2,057.00. On February 11, 1983, the Atkinsons commenced this civil action by filing their complaint in the Circuit Court of Oktibbeha County. NBC was named as defendant. The complaint charged NBC with unlawful conversion of a portion of the proceeds of the sale of the van and demanded $2,057.00 in actual damages and $5,000,000.00 in punitive damages.
On March 2, 1983, the bank answered, denying the essential allegations of the complaint, and asserting a counterclaim based upon the $20,000 note which was then unpaid. The depositions of the Atkinsons were taken on May 2, 1983.
This lawsuit then went into the deep-freeze for over three years. The next filing of consequence took place on July 3, 1986. At that time NBC moved for summary judgment asking, first, dismissal of the Atkinsons' original claim and, second, for judgment over on its counterclaim on the $20,000 note. After receiving the briefs and argument of counsel, the Circuit Court on July 31, 1986, entered judgment, first, dismissing the Atkinsons' complaint with prejudice. Thereafter, the Court entered judgment on NBC's counterclaim against Atkinsons, jointly and severally, for the principal sum of $18,665.46, together with interest thereon in the amount of $8,818.71 and attorneys fees in the amount of $4,122.63, for a total judgment of $31,606.80, plus costs. The judgment further provided that it would bear interest from date of the contract rate of five percent over the Federal Reserve discount rate, adjusted quarterly thereafter, in conformity with the terms of the underlying note.
In the meanwhile, Scribner Equipment Company, Inc. had begun making payments in discharge of its liability to NBC *165 based on the continuing guaranty agreement. Scribner paid $5,000 on October 15, 1985, and a like amount on the 15th day of the next three months with the last payment on January 15, 1986, discharging its full $20,000 obligation under the guaranty.

III.
The Atkinsons argue on appeal that they are entitled to a reduction of the judgment against them for the $20,000 paid by Scribner and for a recomputation of interest following the reduction. The argument, if we comprehend it, is that the $20,000 paid by Scribner operated to satisfy a like amount of the Atkinsons' obligation to the bank and that, to that extent, the Atkinsons stood discharged.
The Atkinsons rely on the old case of Rawlings v. Poindexter, 14 Miss. 66 (1850). In Rawlings Mason was the maker of a bill of exchange for $4,000. Lanier endorsed the note to Rawlings. On demand, Lanier paid $2,000 of the $4,000 debt to Rawlings. The Court said:
The first charge, "that if any part of the bill was paid by the first endorser, the second endorser was discharged from liability to that extent", was correct, and requires no comment.
The statement on its face renders Rawlings quite distinguishable. There, payment by one endorser discharged a second endorser. Nothing in Rawlings stands for the proposition that payment by an endorser or guarantor discharges the original maker. Put otherwise, Rawlings is a case between two parties each secondarily liable. How the Atkinsons divine any comfort in Rawlings escapes us, as not one word in the opinion suggests that payment by a party secondarily liable operates to discharge primary obligors.
The rule in this state is found in Stribling Bros. Corporation v. Euclid Memphis Sales, 235 So.2d 239, 241-42 (Miss. 1970). Payment by a guarantor of another's indebtedness does not extinguish the obligation of the debtor to pay according to his agreement. Whatever may be the relationship in rights of the payee and guarantor, the fundamental scheme of the transaction remains, and that scheme is that the primary obligors, the Atkinsons, are obligated to pay the full measure of the indebtedness provided in their contract.
To be sure, what Scribner as guarantor has paid NBC, Scribner had a right to recover of and from the Atkinsons. See Comfort Engineering Co., Inc. v. Kinsey, 523 So.2d 1019 (Miss. 1988); Stribling Bros. Corp. v. Euclid Memphis Sales, 235 So.2d 239, 242 (Miss. 1970); Buckley v. Guilbert, 250 Miss. 240, 244, 164 So.2d 743, 744 (1964). This is nothing more than conventional subrogation law. See First National Bank of Jackson v. Huff, 441 So.2d 1317, 1320 (Miss. 1983).
In a sense the Atkinsons are arguing that NBC had no standing to sue with respect to the $20,000 portion of the Atkinsons' obligation which had been paid by Scribner. Of course, that payment did not discharge the Atkinsons' entire indebtedness to NBC and the Atkinsons do not contend otherwise.
Scribner paid in discharge of its own obligation, not the Atkinsons'. The payment made by Scribner did not diminish the Atkinsons' liability on their original obligation to any extent. The question is who can sue for their default. For the present it is a sufficient answer that NBC, as the holder of the note, can bring suit against the Atkinsons and enforce all obligations thereunder, although to the extent of Scribner's payment NBC's recovery over and above the full discharge of the indebtedness held by NBC is in trust for Scribner. See Madison Square Bank v. Pierce, 137 N.Y. 444, 33 N.E. 557, 559 (1893).
No reason on principal has been articulated why a payee such as NBC should not be allowed on these facts to maintain the suit where the primary obligor has in no way discharged his obligation and where that obligation well exceeds that paid by the guarantor. In procedural parlance NBC is a real party in interest. See Rule 17(a), Miss. R. Civ. P.; Navarro Savings Association v. Lee, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980).
*166 In the interest of avoiding multiplicity of actions, we hold on these facts that an action such as this can be maintained by NBC, only that, if NBC recovers more than enough to make itself whole, that excess as a matter of law is held by NBC in trust for Scribner.
Here, however, we encounter a problem. No one disputes that Scribner has paid $20,000 to NBC under the guaranty. No one seriously disputes that on these facts Scribner would ordinarily have, via subrogation or whatever theory one might articulate, a right to recover that $20,000 of and from the Atkinsons. The Atkinsons say, however, that, if such a suit were brought by Scribner, they would have an affirmative defense. We regard it only a sensible corollary to what we have just said that, in a suit by NBC on behalf of Scribner, the Atkinsons may assert any defenses they might have in a suit against them by Scribner.
The defense the Atkinsons assert, reads something like this. There was another lawsuit brought by the Atkinsons apparently related to this same matter. That case was styled Atkinson v. Scribner Equipment Corp., Etc., Case No. 23,794 on the docket of the Circuit Court of Monroe County. That case was tried in March of 1986. The Atkinsons argued below, as they do here, that Scribner's $20,000 claim against them was a compulsory counterclaim within the meaning of Rule 13(a) Miss.R.Civ.P.[1] That claim obviously matured in January of 1986 when Scribner made its last payment to NBC. The Atkinsons argue that, if Scribner had wished to sue them to recover the $20,000.00 it had paid NBC, Scribner was obliged under Rule 13(a) to assert that claim in the March 1986 trial of the Monroe County lawsuit or not at all. The Atkinsons argue further that Scribner failed to assert that claim at that time and that, accordingly, under the rules it is barred. The Atkinsons make a second argument. They say that Scribner gave its guaranty without their request and without even their knowledge and that Scribner's "unsolicited and confidential guaranty ... constituted a gift" so that Scribner was not entitled to recover those sums from the Atkinsons.[2]
On both of these issues  the Rule 13(a) procedural claim and the volunteer claim  the Atkinsons are asserting claims in bar. These are in the nature of affirmative defenses. As such the Atkinsons had the burden of proof at trial. In our present summary judgment posture, the Atkinsons bore the risk of the inadequacies of the record. See Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988); Grisham v. Long V.F.W. Post No. 4057, Inc., 519 So.2d 413, 415-16 (Miss. 1988); Galloway v. Travelers Insurance Co., 515 So.2d 678, 683 (Miss. 1987).
Regarding the Rule 13(a) defense, we find references in the briefs to the Monroe County action between the Atkinsons and Scribner. We also find a brief affidavit from the Atkinsons' counsel regarding testimony at that trial. None of this is sufficient to establish the Rule 13(a) defense. At the very least, it would have been incumbent upon the Atkinsons to file with this Court a certified copy of the appropriate proceedings of the Monroe County action, and particularly the pleadings. This has not been done. The Atkinsons have furnished us no means of knowing with confidence whether their compulsory counterclaim defense has merit.
Similarly, on the second defense we have only the hearsay assertion of plaintiff's counsel that evidence was adduced at trial of the Monroe County action that Scribner "unbeknownst to Peter K. Atkinson or *167 Norma A. Atkinson had guaranteed the debt." The Atkinsons have placed in the record nothing in form or substance which would empower the court, consistent with Rule 56, Miss.R.Civ.P., to hold that on the "volunteer/gift" defense there was an issue for trial. There is nothing untoward in a contract of guaranty made without the knowledge of the principal debtor. See Elder, Stearns Law of Suretyship, § 4.11, p. 73 (1951). While there is no implied promise of reimbursement as when the guaranty is entered into at the request of the debtor, subrogation principles still control. See Mobile Discount Corp. v. LuBean, 134 Ariz. 350, 656 P.2d 639, 642-43 (Ariz. App. 1982).
As a matter of law the Atkinsons' showing on each of these defenses is insufficient to establish a genuine issue of material fact which would avoid summary judgment. The assignment of error is denied.

IV.
The final issue is the Atkinsons' claim for conversion. This has reference to the consent sale of the Chevrolet van. That van, it will be recalled, was sold for $3,200.00. Off the top NBC paid itself $1,143.00 to retire the note the van had secured. No complaint is made there.
The Atkinsons argue, however, that they were not in default at the time and that NBC had no authority to retain any of the funds. Of course, sale of the collateral was itself an act of default on the small note. The sale appears to have been made with the consent of all. That no claim is made that the bank had no right to pay itself $1,143.00 is apparent from the Atkinsons' complaint  they claimed conversion only of the balance of $2,057.00.[3]
Many questions remain unanswered in this record, questions that cannot help but occur to the legal mind. In some respects this seems more a case for Ellery Queen than for the Supreme Court. One fact is beyond dispute. In January of 1983 the Atkinsons were in default on the $20,000.00 note. Their only possible escape from this view is Norma Atkinson's feeble suggestion that the note would be extended if the interest were brought up to date to the tune of some $689.00. Not one word before us suggests that this sum was paid. NBC thus had sufficient rights in the $2,057.00 that an action for conversion does not lie. Compare Masonite Corp. v. Williamson, 404 So.2d 565, 567 (Miss. 1981); and Mississippi Motor Finance Co. v. Thomas, 246 Miss. 14, 20, 149 So.2d 20, 23 (1963).
One of the unanswered questions merits note. NBC says it paid $1,057.00 to Scribner.[4] Should not this then reduce the Atkinsons' obligations to Scribner by that amount, and, further, should not this then reduce the amount NBC can sue the Atkinsons for and recover in trust for Scribner? On the other hand, NBC made the payment to Scribner in January of 1983. Scribner did not start paying under the guaranty until October, 1985. Perhaps the two are unrelated. As the record is woefully lacking, and as the Atkinsons do not assert this point on their appeal, nothing said here should be taken as considering or deciding it  only as suggesting that we may not be blind.
In any event the Atkinsons' assignment of error presenting the conversion issue is denied.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and SULLIVAN and ZUCCARO, JJ., concur.
HAWKINS, P.J., and GRIFFIN, J., dissent by separate written opinion.
PRATHER and ANDERSON, JJ., not participating.
*168 HAWKINS, Presiding Justice, dissenting:
I respectfully dissent from that portion of the majority opinion which holds that a bank, having been paid an indebtedness by a guarantor, may still maintain, solely in its own name, a suit against the principal obligor.
As I understand from the majority, the $20,000 indebtedness due by the Atkinsons was paid by Scribner Equipment Company, Inc., which had previously guaranteed payment. Having paid this indebtedness, Scribner was subrogated to all rights of the bank in the note. Stribling Bros. Corporation v. Euclid Memphis Sales, 235 So.2d 239 (Miss. 1970).
I certainly agree with the majority that payment of the note by Scribner did not discharge the Atkinsons from an obligation to pay it. That is not our question at all, however. The question is whether the bank, having been paid in full, should be allowed to proceed to judgment and collect in its own name a note which has been paid by another. This is contrary to Rule 17(b) of our Mississippi Rules of Civil Procedure, and is manifestly anomalous. I hardly think Scribner needs such paternalism by the bank. It is fully capable of instituting suit as subrogee or assignee in its own name.
Nor is it any answer to state, as does the majority, that any sum the bank collects it will hold as trustee for the benefit of Scribner. What happens when a bank becomes insolvent? Or suppose a payee is less than honest?
Lawsuits are not places to have some silent partner sitting out there in the wings.
In this case the court should have required Scribner to sue in its own name, or at least required that Scribner be joined as a necessary party. It should not have permitted the bank to sue and recover in its own name an indebtedness which had been fully paid, even though the source of such payment was not the principal obligor.
The first sentence of Rule 17(a) states:
Every action shall be prosecuted in the name of the real party in interest.
Rule 17(b) provides:
(b) Subrogation Cases. In subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim the action shall be brought in the name of the subrogee. If the subrogor still has a pecuniary interest in the claim the action shall be brought in the names of the subrogor and the subrogee.
As I read the majority, even though the bank has been paid the $20,000 note in full plus all interest, it may still sue the Atkinsons in its own name.
I cannot agree.
GRIFFIN, J., joins this opinion.
NOTES
[1] For a plenary discussion of compulsory counterclaims under Rule 13(a), Miss.R.Civ.P., See Robertson, Joinder of Claims And Parties  Rules 13, 14, 17 and 18, 52 Miss.L.J. 37, 48-63 (1982).
[2] Both of these points, the Rule 13(a) and the volunteer theory, are outside the pleadings. Neither is mentioned in the Atkinsons' answer to the counterclaim. Perhaps an explanation is that Scribner did not make its payments until late 1985 and early 1986, well after the pleadings were closed. Ordinarily an amendment would have been appropriate. We find in this record, however, no objection by NBC and we will treat the point as having been litigated by consent. See Rule 15(b), Miss.R.Civ.P.; Johnson v. Franklin, 481 So.2d 812, 815 n. 4 (Miss. 1985).
[3] As should be apparent, we regard the record quite inadequate on many points. For the moment we find it suggested here that NBC "converted" the full $2,057.00 and paid it to Scribner. NBC, however, says it paid $1,000.00 to the Atkinsons and $1,057.00 to Scribner. Fortunately, nothing turns on this discrepancy.
[4] See footnote 3 above.