576 P.2d 503

ALLSTATE INSURANCE COMPANY,
Petitioner,

v.

The Honorable William E. DRUKE, Judge
of the Superior Court, and the Honora-
ble James C. Carruth, Judge of the Su-
perior Court, Respondents, and Letha
Pancoe, Linda Vincent, Oliver B. Mitch-
ell, Jerrold S. Huffstetler, Barbara
Huffstetler, Kenneth Pearman, and Con-
nie Pearman, the Real Parties in Inter-
est, Respondents.

Letha PANCOE, Linda Vincent, Oliver B.
Mitchell, Jerrold S. Huffstetler, Barbara
Huffstetler, Kenneth Pearman, and Con-
nie Pearman, the Real Parties in Inter-
est, Cross-Petitioners,

v.

The Honorable William E. DRUKE, Judge
of the Superior Court, and the Honora-
ble James C. Carruth, Judge of the Su-
perior Court, Respondents, and Allstate
Insurance Company, the Real Party in
Interest, Cross-Respondents.

No. 2 CA–CIV 2609.

Court of Appeals of Arizona,
Division 2.

Sept. 1, 1977.

Rehearing Denied Oct. 5, 1977.

Review Granted Nov. 8, 1977.

Slutes, Browning, Zlaket & Sakrison, P. C. by Thomas A. Zlaket, Tucson, for petitioner and real party in interest Allstate.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman and Nanette M. Warner, Tucson, for respondents real parties in interest and cross-petitioners.

## OPINION

HATHAWAY, Judge.

Petitioner, hereinafter referred to as Allstate, is the defendant in a pending superior court class action which, although alleging five counts, in essence attacks the validity of a provision in Allstate's automobile insurance policy concerning medical payments coverage. Allstate now challenges the respondent court's denial of its motion for summary judgment.

The Allstate liability insurance agreement provides in the General Conditions section at Paragraph 10:

"*Subrogation*

Upon payment under

(a) Section I [Liability Protection] or Section III [Loss to the Automobile Protection], Allstate shall be subrogated to the extent of such payment to all of the insured's right of recovery therefor; and

(b) Part I of Section IV [Medical Payments insurance], each insured shall re-

pay Allstate out of the proceeds, if any, recovered in exercise of his rights against any person liable to the insured because of the bodily injury for which such payment was made.

The insured shall do whatever is necessary to secure such rights and do nothing before or after loss to prejudice such rights."

The record also reflects that Allstate sends a form letter to its insured involved in an accident which contains the following:

"Did you incur medical expenses as a result of your recent accident?

If so, and you desire to present the claim under the Medical Payments coverage, the enclosed form should be completed by you and your doctor and returned to us with your itemized bills.

If the other party or his bodily injury liability insurance carrier makes a settlement with you, policy conditions applicable to the Medical Payments coverage require that you repay Allstate Insurance Company out of the proceeds of the settlement, to the extent of the payments made under the Medical Payments coverage.

In the event you do present a claim under Medical Payments coverage, we will notify the other party and his carrier of our interest and will request that Allstate's name be included on any settlement draft or check.

Please indicate by checking the appropriate statement at the bottom of this letter, how you wish to handle your claim for medical expenses, and return the letter to us promptly.

\*    \*    \*    \*    \*    \*

_____I do not desire to present a medical payments claim.

_____I plan to submit a medical payments claim and understand that Allstate is to be repaid the amount of such claim out of the proceeds of any bodily injury liability settlement.

Signed_____

Date_____ "

The basis of the plaintiffs' claim was that under Arizona law Allstate had no right of subrogation to recovery by its insured against a tortfeasor who was or might be liable for tort damages arising from the automobile accident which caused Allstate to pay medical expenses and that Allstate had no right to obtain or require from its insured an assignment of all or any part of the insured's cause of action against such tortfeasor. The complaint alleged that Allstate was contractually obligated to pay to or on behalf of its insured all medical expenses, up to policy limits, and had no legal rights to condition such payment upon assignment of or subrogation to the recovery by those insured of damages from any tortfeasor who was or might have been legally liable for payment of such damages. It further alleged that Allstate had systematically denied its obligation to pay such medical expenses in the absence of an agreement by its insured to assign a portion of their recovery or to acknowledge a right to subrogation and that the plaintiffs either had been refused payment of medical expense benefits because of this failure or refusal to acknowledge the right of subrogation or to execute an assignment, or had reimbursed Allstate out of the proceeds of recovery from a tortfeasor for medical expenses paid by Allstate under the medical payments coverage.

The basis for the respondent court's denial of Allstate's motion for summary judgment were the cases of *Harleysville Mutual Insurance Company v. Lea*, 2 Ariz.App. 538, 410 P.2d 495 (1966), and *State Farm Fire and Casualty Company v. Knapp*, 107 Ariz. 184, 484 P.2d 180 (1971). In both *Harleysville* and *Knapp*, it was held that since a cause of action for personal injuries is not assignable, a subrogation clause of an insurance policy [*Knapp*] or subrogation provisions of a policy and a receipt executed by the insured [*Harleysville*] are unenforceable by the insurer. In *Harleysville*, the court stated:

"Any rights that the insurance company may have as a subrogee in the instant case, either by virtue of the insurance contract or the receipt and release signed by the defendant Lea, must be based upon the ability in law of the defendant Lea to assign in whole or in part, his cause of action for personal injuries to the insurance company. If the defendant Lea may not in law assign his cause of action to the plaintiff either in whole or in part, then his cause of action may not be subrogated." 2 Ariz.App. at 540, 410 P.2d at 497.

And:

"We feel and therefore hold, that the better reasoned rule is that even though a cause of action for personal injury may survive, an action still may not be assignable either in whole or in part *prior to judgment.*" 2 Ariz.App. at 541, 410 P.2d at 498. (Emphasis added)

■ Subrogation originated as a creature of the common law. Basically it is classified as either legal or conventional. Legal subrogation arises out of a condition or relationship by operation of law, whereas conventional subrogation arises by act or agreement of the parties. 83 C.J.S. Subrogation § 1; 73 Am.Jur.2d, Subrogation, § 2. Subrogation is founded on principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all parties without regard to form. 83 C.J.S. Subrogation § 2a. "As a general rule, any person who, pursuant to a legal obligation to do so, has paid, even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default." 83 C.J.S. Subrogation § 16. A distinction is made between subrogation and assignment—subrogation presupposes an actual payment in satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling

him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. 6A C.J.S. Assignments § 5d.

In *Knapp, supra,* however, our Supreme Court indicated that "subrogation amounts to an assignment." 107 Ariz. at 185, 484 P.2d 180. Our reading of *Knapp* and *Harleysville,* upon which *Knapp* relies, leads us to conclude that their prohibition is directed solely to an insured's right of action for all or a portion of his claim for personal injuries. We do not believe, however, that these two cases invalidate a contractual provision as to repayment by the insured to the insurer when and if the insured's unliquidated cause of action is converted to a liquidated sum, either by settlement with, or satisfaction of a judgment against the third-party tortfeasor.[1]

The contract provision involved here is not contrary to the principles enunciated in *Harleysville* and *Knapp.* In contrast with 10(a), Paragraph 10(b) does not give the insurer any right to bring on its own behalf an action against a third party to the extent of medical payments made by it. The insurer's rights, if any, to reimbursement arise only when and if the insured has made a recovery by settlement or judgment against the third-party tortfeasor, and only from the funds recovered. As to 10(b), the provision in the policy that "The insured shall do whatever is necessary to secure such rights and do nothing before or after loss to prejudice such rights" is nothing more than a contractual undertaking by the insured to preserve and protect the insurer's rights. It does not give the insurer any right to step into the shoes of the insured and pursue his claims but at most a right against its own insured. We express no opinion on whether the insurer can force the insured to file suit or take any other action against the tortfeasor.

■ In California, as in Arizona, it is the established rule that an assignment of a

cause of action for personal injuries is void and that, in the absence of statute, a cause of action for tortious injury to the person is not subject to subrogation. *Fifield Manor v. Finston,* 54 Cal.2d 632, 7 Cal.Rptr. 377, 354 P.2d 1073 (1960); *Peller v. Liberty Mutual Fire Insurance Company,* 220 Cal. App.2d 610, 34 Cal.Rptr. 41 (1963). However, the California courts, in construing provisions similar to the one we have here, have held that when the legal effect of such provision is neither a direct or indirect transfer to the insurer of any cause of action he might have against a third-party tortfeasor nor to subject such cause of action for tortious injury to the person to subrogation, it is not a prohibited assignment of a cause of action. *Lee v. State Farm Mutual Insurance Company,* 57 Cal. App.3d 458, 129 Cal.Rptr. 271 (1976); *West v. State Farm Mutual Auto Insurance Company,* 30 Cal.App.3d 562, 106 Cal.Rptr. 486 (1973); *Block v. California Physicians' Service,* 244 Cal.App.2d 266, 53 Cal.Rptr. 51 (1966). In *Lee,* just as here, the plaintiffs emphasized the fact that the challenged provision was prefaced by the label "Subrogation." We approve the California court's answer:

"Subrogation or assignment of a cause of action for personal injury operates to transfer from one person to another that cause against a third party. The reasons of policy against the assignment or subrogation of certain personal causes do not apply to insurance policy provisions that merely require the insured to reimburse the insurer out of any recovery or settlement. Plaintiffs have stressed the use of the word 'subrogation' in the insurance agreement while arguing against the requirement that the insured execute and deliver instruments and papers and do whatever else is necessary in order to secure the insurers' rights labeled 'subrogation.' The right of subrogation contained in each contract is stated to be '. . . to the extent of such payment

---

1. We note parenthetically that the holding of *Travelers Indemnity Company v. Chumbley,* 394 S.W.2d 418 (Mo.App.1965), cited with approval in both *Harleysville* and *Knapp,* has

been diluted by the case of *Kroeker v. State Farm Mutual Automobile Insurance Company,* 466 S.W.2d 105 (Mo.App.1971).

to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which *the injured person or any one receiving such payment* may have against any person or organization . . . .' The argument that the provision under attack is an assignment or true subrogation obviously fails. Substance rather than form is the determining factor. The right given to the insurer according to the terms of the policy is not to the chose in action but is to the proceeds of any settlement or judgment resulting from the exercise of the injured party's rights of recovery against a third party tortfeasor. The right of repayment, reimbursement or subrogation does not arise until the proceeds of settlement or judgment come into existence." 129 Cal.Rptr. at 276. (Emphasis added)

We hold, therefore, that the clause in petitioner's insurance policy constitutes neither an assignment of a personal chose in action nor a subrogation since it effects no transfer of a cause of action for personal injuries. Thus, since its validity was not vulnerable to attack, and since this entire lawsuit was predicated upon such invalidity, petitioner's motion for summary judgment should have been granted.[2]

For the foregoing reasons, the petitioner's motion should have been granted and the respondent court is directed to enter an appropriate order not inconsistent with this opinion.

HOWARD, C. J., and RICHMOND, J., concurring.

---

**2.** The plaintiffs' reliance on *Jones v. Aetna Casuality & Surety Company,* 497 S.W.2d 809 (Mo. App.1973), is misplaced. In *Jones,* a "reimbursement and trust agreement" provision of an automobile liability policy provided that the insured agreed to hold in trust for the benefit of the insurer all *rights of recovery* against the tortfeasor. The court pointed out that this was a transfer in trust of the insured's right of action for a portion of his claim for personal injury.