634 P.2d 20

**WESTERN COACH CORPORATION, an Arizona Corporation, Plaintiff-Appellant,**

**v.**

**Harry H. REXRODE and Dorothy C. Rexrode, his wife and each of them, Defendants-Appellees.**

**No. 1 CA–CIV 4975.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 13, 1981.

Rehearing Denied Sept. 11, 1981.

Review Denied Sept. 29, 1981.

Steven L. Wasserman, Phoenix, for plaintiff-appellant.

Johnson, Shelley & Roberts by J. LaMar Shelley, Mesa, for defendants-appellees.

## OPINION

JACOBSON, Judge.

Two principal issues are raised by this appeal: (1) Whether a seller under a secured transaction which assigns its seller's interest with recourse may maintain an action against the buyer under a theory of subrogation for payments made on the buyer's behalf, and (2) whether a guarantor who takes possession of a debtor's collateral is subject to the statutory requirements and liabilities imposed by A.R.S. § 44–3151(A).

This action arises out of an amended complaint whereby plaintiff-appellant, Western Coach Corporation (Western), sought to recover from defendants-appellees, Harry H. Rexrode and Dorothy C. Rexrode (Rexrode), money allegedly paid by Western for the following items:

(1) Installment payments made by Western on behalf of Rexrode to Fidelity Acceptance Corporation under a contract of sale wherein Western was the seller and Rexrode was the buyer.

(2) Cost of moving and storing a mobile home which was the subject of the contract of sale.

(3) Cost of refurbishing the mobile home.

(4) Cost of insurance of the mobile home.

(5) Attorney's fees and court costs.

Rexrode, without filing an answer to the amended complaint, moved to dismiss the amended complaint for failure to state a cause of action and filed a counter-claim seeking damages from Western for conversion of the mobile home. The trial court granted Rexrode's motion to dismiss. Rexrode then moved for summary judgment on its counterclaim based upon the theory that Western, as a secured party had repossessed the mobile home in question and had failed to sell it within the statutory time period imposed by A.R.S. § 44–3151(A)[1] and therefore Rexrode was entitled to the penalties exacted by A.R.S. § 44–3153(A).[2]

The trial court granted the motion for summary judgment and entered judgment against Western for approximately $7,400. Western has appealed both the granting of the motion to dismiss the amended complaint and the granting of summary judgment in Rexrode's favor.

The facts set forth in Western's complaint, which because of the posture of this litigation we deem to be true, are that on June 30, 1969, Rexrode agreed to purchase from Western a 1969 Sarasota mobile home for the total time balance of $12,367.20, after a down payment. This balance was to be paid in 120 monthly installments. Western, as seller, retained a security interest in the mobile home as collateral for the payment of the balance of the purchase price. Western, according to its amended complaint, advised Rexrode that it would not be able to carry the balance of the purchase price and that the contract would be financed through Fidelity Acceptance Corporation (Fidelity). (The contract itself provided that "the Total Time Price is [to be] paid in full, at the office of Fidelity Accept. Corp., 142 S. Central, Phoenix, Arizona.")

On the face of the retail installment contract was a clause entitled "Seller's Assignment Warranty and Repurchase Agreement" by which Western assigned to Fidelity "all right, title and interest in and to the within contract and to the property covered thereby . . . ." In addition to certain warranties, the assignment clause specifically provided: "The undersigned [Western] guarantees payment of the full amount remaining unpaid hereon . . . ."

Rexrode made payments under this contract until August 13, 1977, and then defaulted. The sum of $2,815.49 was still due and owing under the contract at the time of default. The complaint alleged that at the time of default, Rexrode had abandoned the mobile home, it was in a state of disrepair and Rexrode had removed all of the furnishings. Western took possession of the mobile home, moved it to its own lot, and completely refurbished it at a cost of $2,437.10. In addition, Western made monthly payments to the financing assignee in the sum of $864.48.

In the meantime, Fidelity has assigned the contract, including the security interest, to Old Kent Bank, which assigned it to Delta Investment Corporation, which in turn assigned the contract to Gulf Homes, Inc. (Gulf). The president of Western is also the president of Gulf. Following the assignment to Gulf, Western ceased making payments and Gulf repossessed the mobile home from Western. On October 10, 1978, Gulf conducted an auction at which it pur-

---

1. A.R.S. § 44–3151(A) provides:

   If the debtor has paid sixty per cent of the cash price in the case of a purchase money security interest in consumer goods or sixty per cent of the loan in the case of another security interest in consumer goods, and has not signed after default a statement renouncing or modifying his rights under §§ 44–3147 to 44–3153, inclusive, a secured party who has taken possession of collateral must dispose of it under § 44–3150 and if he fails to do so within ninety days after he takes possession the debtor at his option may recover in conversion or under sub-

   section A of § 44–3153 on secured party's liability.

2. A.R.S. § 44–3153(A) provides in part:

   If it is established that the secured party is not proceeding in accordance with the provisions of §§ 44–3147 to 44–3153, inclusive, . . . [that] disposition has occurred . . . [and that] the collateral is consumer goods, the debtor has a right to recover . . . an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

chased the mobile home for the sum of $1,250.

Western then brought this action against Rexrode. Gulf in a separate action sought a deficiency judgment against Rexrode. In the Gulf action certain discovery was undertaken, which Rexrode used in support of its motion for summary judgment on its counterclaim against Western. The Gulf action was subsequently dismissed and is not a concern in this appeal.

Western's amended complaint was based upon a theory of subrogation arising out of its status as a guarantor of Rexrode's obligation to Fidelity. The trial court dismissed the amended complaint on the theory that the original contract between Western and Rexrode provided that in the event of Rexrode's default, Western, as seller, was granted the remedy of acceleration of the debt, repossession of the security, sale of the security and a deficiency judgment following sale. In the trial court's opinion, these remedies were exclusive, thus barring a remedy based upon subrogation.

We need not here determine whether the contractual remedies afforded Western as a seller were or were not exclusive. *See Zancanaro v. Cross*, 85 Ariz. 394, 339 P.2d 746 (1959). Here, Western sought recovery against Rexrode, not as a seller under a secured installment contract, but rather as a guarantor of Rexrode's debt seeking reimbursement for the payment of a portion of that debt. Rexrode does not argue that the agreement between Western and Fidelity did not give rise to Western becoming a guarantor of Rexrode's debt to Fidelity. Nor does Rexrode contest that pursuant to that guaranty, Western made payments on Rexrode's behalf on Rexrode's obligation.

Given then the admitted status of Western as a guarantor of Rexrode's debt, the general rule allowing the guarantor reimbursement from the principal debtor is set forth in *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 180, 118 P.2d 454, 455 (1941):

The general rule of law in regard to guaranty is that where one has entered into a contract of guaranty at the request of a principal debtor and has been com-

pelled to pay his principal's debt, there is an implied promise of reimbursement, and on the payment of the debt the guarantor has an immediate right of action against the principal for the amount which he has thus been compelled to pay.

Rexrode argues, however, that since Western was the original seller and by contract its remedies as a seller were limited, it could not by assignment relieve itself of these limitations. This argument is completely immaterial in the context of the contractual relationships established between the parties to this transaction. On the one hand, a set of contractual liabilities and obligations arose out of the parties' status as buyer and seller. These obligations and liabilities insofar as Western as the seller was concerned were assigned to Fidelity. On the other hand, a complete, separate and distinct set of contractual liabilities and obligations exist between Rexrode and Western arising out of Western's position as a guarantor of Rexrode's underlying obligation. There is nothing in this contract or the law which requires that the rights possessed as a seller preclude the exercise of rights which a seller may possess by reason of it also being a guarantor.

While not directly addressing the rights of the parties arising out of their distinct and separate relationships, Rexrode argues that by reason of A.R.S. § 44–3150(E), Western became a secured party and therefore was limited to the remedies of a secured party, that is, repossession and the sale of security. A.R.S. § 44–3150(E) provides, in part:

A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party.

■ However, this statute by its terms has no application to Western, at least in the posture in which this action reaches us. The statute confers the status of a secured party upon a guarantor who "receives a transfer of collateral from the secured par-

ty or is subrogated to *his rights."* There is no evidence that Fidelity or any of its assignees ever transferred the collateral (the mobile home) to Western. Moreover, the subrogation of the guarantor to "his rights" refers to the rights of the original party in the security. A guarantor can only acquire the rights of the original secured party in the collateral upon payment of the entire debt. *Leventhal v. Krinsky,* 325 Mass. 336, 90 N.E.2d 545 (1950); *Fender v. Fender,* 30 Ga.App. 319, 117 S.E. 676 (1923). Again, there is no evidence that Western paid Rexrode's entire debt (in fact the allegations are to the contrary) and thus Western acquired no right of subrogation to the creditor's rights in the collateral.

We likewise reject Rexrode's argument that Western must pay off the entire debt before it can compel Rexrode to reimburse it. We have held that a guarantor is not subrogated to the creditor's security interest until the guarantor pays off its entire debt owed. Some cases have stated this rule in broader terms, namely that a guarantor is not subrogated to *any* rights of the creditor until the guarantor pays off the entire debt. *See e. g. American Surety Co. of New York v. Westinghouse Electric Mfg. Co.,* 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935); and *Skinkle v. Huffman,* 52 Neb. 20, 71 N.W. 1004 (1897).

■ We find this statement of the rule to be overbroad. The sole purpose of requiring full payment by the guarantor is to protect the creditor from having the exercise of his rights against the debtor impaired by the guarantor's exercise of subrogation rights. Hence the requirement of full payment does not apply to subrogation claims which could not impair the rights of the creditor. *Hurt v. Read,* 108 F.2d 282 (5th Cir. 1939); *United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P.2d 70 (1960). A guarantor's claim against the debtor for reimbursement ordinarily does not impair in any manner the rights of the creditor. Accordingly, where, as here, the guarantor is liable for the remaining payments, it may proceed against the debtor for reimbursement for

any sums it has expended previously in payment of the debtor's obligations. *Fender v. Fender, supra; Nettleton v. Ramsey County Land & Loan Co.,* 54 Minn. 395, 56 N.W. 128 (1893).

Rexrode's final argument in favor of the dismissal is that Western lacks subrogation rights because Rexrode never assented to Western's guaranty of his payments. Western alleged in its complaint that Rexrode assented but Rexrode contends that proof of assent is barred by the parol evidence rule.

■ We need not here explore the contours of the parol evidence rule, for Rexrode's assent under the circumstances presented here was unnecessary. A debtor's consent to a guaranty is not required before the guarantor can claim subrogation rights against the debtor. *Alexander v. Young,* 65 F.2d 752 (10th Cir. 1933); *Sloat-Darragh Co. v. General Coal Co.,* 276 F. 502 (6th Cir. 1921). All that is required before reimbursement may be sought is that the guarantor be under a legal, as compared to a moral, obligation to pay the underlying debt. *See Mosher v. Conway,* 45 Ariz. 463, 46 P.2d 110 (1935). Here, Western has alleged the existence of a written document imposing upon it the obligations of a guarantor. At this stage of the proceedings, this is sufficient to withstand a motion to dismiss.

Based upon the foregoing, we hold that Western's amended complaint at least stated a cause of action for reimbursement for sums expended in payment of Rexrode's debt. On this basis alone, the trial court's dismissal of the action was improper and must be reversed. However, we do not rule upon the issue of whether a guarantor may seek damages from its principal for removing, storing, refurbishing, or insuring the collateral which secures the underlying debt.

■ The remaining issue raised by Western is whether the superior court erred in granting Rexrode summary judgment on his counterclaim. The theory under which the superior court granted summary judg-

ment was that Western was a secured party which repossessed Rexrode's collateral (the mobile home). When Western exercised its right as a secured party to repossess the home, Rexrode had already paid more than 60% of the purchase price. Western therefore had an obligation by virtue of A.R.S. § 44–3151(A) to sell the property within 90 days. Western did not sell the mobile home within 90 days, so Western is liable under A.R.S. § 44–3153 for damages of ten per cent of the principal amount of the debt or the time price differential, plus ten per cent of the cash price.

This theory breaks down at the outset because the statutory duty to sell applies only to secured parties and, as we held above, Western was not a secured party when it retook possession of the mobile home. Because Western was not a secured party when it retook possession of the mobile home, the duty to sell never came into existence. The superior court therefore erred in granting Rexrode summary judgment on his counterclaim on this theory.

We express no opinion as to whether Rexrode's counterclaim may survive on a theory of common law conversion. This issue is best left to further exploration in the trial court.

The judgment of the trial court dismissing Western's amended complaint and granting summary judgment in favor of Rexrode is reversed and the matter remanded for further proceedings.

HAIRE, P. J., and EUBANK, J., concur.