656 P.2d 639

**MOBILE DISCOUNT CORPORATION, an Arizona corporation, Plaintiff/Appellant,**

**v.**

**Earnest B. LuBEAN and Jane Doe LuBean, husband and wife, Defendants/Appellees.**

**No. 1 CA–CIV 5682.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 12, 1982.

Rehearing Denied Nov. 24, 1982.

Review Denied Jan. 5, 1983.

Tanner, Jarvis & Owens by Stephen C. Birringer, Phoenix, for plaintiff/appellant.

Robinson & Syme by Robert G. Robinson, Phoenix, for defendants/appellees.

1. As a result of the various transactions between Redmond, Novak, Mobile, Mission and LuBean, Mission gained the seller's rights, LuBean took possession of the mobile home and incurred the purchaser's obligations, and Mobile guaranteed LuBean's performance.

2. The following testimony was elicited from LuBean regarding his attempt to pay the park rent:

OPINION

GREER, Judge.

This appeal arises from a judgment denying Mobile Discount Corporation's (Mobile) complaint to recover monies expended in rehabilitating a mobile home under its contract of guaranty. The facts necessary to a resolution of this matter are as follows.

On July 19, 1972, George Redmond purchased a new mobile home from Novak's Mobile Home Park (Novak) under the terms of a retail installment contract. On the same date, Novak executed a Seller's Assignment Warranty and Repurchase Agreement to Mobile. Also on the same date Mobile executed a similar repurchase agreement to Mission Bank (Mission). Finally, on January 4, 1974 the appellee, Earnest LuBean (LuBean), and his former wife, purchased the mobile home from George Redmond under the terms of an assumption agreement. The assumption agreement was consented to by Mobile.[1]

The exact sequence of events leading up to Mobile's repossession is not clear from the record. LuBean developed a reputation of being delinquent on his payments to Mission. When Mission did not receive the September, 1978 payment it made demand upon the guarantor, Mobile, for payment of the September installment. LuBean was apparently also delinquent at that time on his payment to the mobile home park for space rental.[2] The record shows that LuBean was served with a twenty-four hour eviction notice on or about September 18, 1978. LuBean testified that he vacated the mobile home the same day, taking with him only what he owned.

> Park rent was due that week, and they refused to take it. The reason they gave me for refusing to accept the rent is that they had contacted the owners of the trailer, which was Mobile Discount, and tried to talk to the owner of the park, and as soon as I mentioned, you know, the park rent the gentleman hung up on me on the phone. I tried on numerous occasions that day to talk to him including going to the office.

5/22/80 Tr., pg. 12.

Mobile's president testified that he inspected the mobile home within twenty-four hours after LuBean vacated it, and discovered that several items were damaged, all furnishings had been removed, and the home was in total disrepair.[3] Mobile thereafter took possession of the mobile home and, without further demand from Mission, incurred expenses in the amount of $2,792.99 as a result of cleaning and repairing the mobile home, completely refurbishing it, and paying the delinquent park rent. It also paid Mission $130.80, representing the September installment payment and a late charge.

Mobile filed suit against LuBean to recover the sums it claims to have expended on LuBean's behalf. Count one of the complaint sought recovery based upon the "law of suretyship, contracts, and laws of quasi contract." Count two alleged that LuBean had been unjustly enriched. The trial court entered judgment in favor of Mobile, but only in the amount of $103.98. Mobile's motion for a new trial was summarily denied.

In this appeal Mobile contends it is entitled to full reimbursement from LuBean. Appellee LuBean argues that Mobile was not obligated to spend the additional sums of money under the guaranty agreement and was, therefore, merely a volunteer and not entitled to subrogation.

■ There are two separate theories upon which a guarantor can rely for indemnification from a principal. First, he may sue upon an implied promise of reimbursement. Second, he may prosecute an action on the debt itself, as subrogee to the rights ·of the creditor. *Highlands Cable Television, Inc. v. Wong*, 547 S.W.2d 324 (Tex.Civ. App.1977); 74 Am.Jur.2d Suretyship § 168, at 118. Although closely related, the two actions are distinct. The complaint did not specify either theory, and the parties have confused them in their briefs.[4]

## IMPLIED PROMISE THEORY

The general rule of law was set forth in *Dykes v. Clem Lumber Company*, 58 Ariz. 176, 180, 118 P.2d 454, 455 (1941):

[W]here one has entered into a contract of guaranty at the request of a principal debtor and has been *compelled to pay* his principal's debts, there is an ·implied promise of reimbursement, and on the payment of the debt the guarantor has an immediate right of action against the principal for the amount which he has thus been compelled to pay. [emphasis added]

■ A guarantor can be "compelled to pay" if he is under a legal obligation to do so. It is clear from the Seller's Assignment Warranty and Repurchase Agreement that Mobile was under a legal obligation to make the installment payment that was in default. It is not clear that he was legally obligated to refurbish the mobile home and pay the park rent.

LuBean maintains that if any obligation arose, it did so as a result of the Seller's Assignment Warranty and Repurchase Agreement entered into between Mobile and Mission. The pertinent provision of that agreement is as follows:

In consideration of your purchase of the within contract, the undersigned guarantees payment of the full amount remaining unpaid thereon and covenants if default be made in payment of any installment due thereon to pay the full amount then unpaid upon demand.

Whether Mobile's payments were a part of its obligations under the contract is a question regarding the scope of the guaranty provision. The general rule regarding the scope of a guaranty agreement is stated in 38 C.J.S. Guaranty, § 43, at 1191:

The nature and extent of the liability of a guarantor depends on the terms of his

---

**3.** Although Mobile introduced testimony that the mobile home was completely furnished when they purchased the paper in 1972, there was no evidence introduced that the mobile home was similarly furnished when LuBean purchased it in 1974. In fact, LuBean testified that he purchased the mobile home unfurnished.

**4.** Mobile did not raise the unjust enrichment theory on appeal.

contract of guaranty, as construed by the general rules of construction.

And, in Stearns, *The Law of Suretyship,* § 2.4, at 13 (5th ed. 1972), it is stated:
The terms of the contract are given their ordinary and usual meaning, and nothing is to be read into the contract that is not implicit in the language used by the parties.

The contract between Mobile and Mission extended only to installment payments in default under the retail installment agreement. Mobile's actions extended well beyond the terms of the agreement.

■ Mobile contends, however, that "its arrangements with Mission Bank required it to keep the security intact if it wanted to have Mission Bank to continue to finance its sales." Although the better rule is that a guarantor's obligation should be clearly expressed in a writing, the principle of guaranty is a creature of equity. As such, equity might be invoked under appropriate facts to require reimbursement. *See, e.g., Mosher v. Conway,* 45 Ariz. 463, 46 P.2d 110 (1935). Whether or not such a course of dealing existed between Mobile and Mission so that an obligation did exist, is a question of fact. No findings of fact were requested and none made on this issue. Thus, we must view the evidence and reasonable inferences therefrom in the light most favorable to upholding the trial court's judgment. *Paul Schoonover, Inc. v. Ram Construction, Inc.,* 129 Ariz. 204, 630 P.2d 27 (1981); *Hueg v. Sunburst Farms (Glendale) Mutual Water and Agricultural Company,* 122 Ariz. 284, 594 P.2d 538 (1979). We find the record before us insufficient to support Mobile's contention that it was legally obligated to incur any expenses other than payment on the installment loan. Accordingly, Mobile has no right to recovery for the additional expenses under the implied promise of reimbursement theory.

## DOCTRINE OF SUBROGATION

The gravamen of Mobile's argument is that it is entitled to complete reimbursement under the doctrine of subrogation. If Mobile was entitled to be subrogated to the rights of Mission, it may in fact be entitled to full reimbursement from LuBean. Under A.R.S. § 44–3150(A) (Supp.1981), a "secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or *following any commercially reasonable preparation or processing.*" (emphasis added) It is certainly conceivable that Mobile's refurbishment and payment of park rent might be considered "commercially reasonable." Paragraph (B) of the same statute further grants the secured party the right to a deficiency judgment following sale of the collateral. Finally, A.R.S. § 44–3150(E) (Supp.1981) specifically grants a subrogee the above rights. There must first, however, be a finding that Mobile is entitled to subrogation before it can claim any rights as a secured seller.

In discussing the law of subrogation, division two has stated:
Subrogation is founded on principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be obtained regardless of form .... 'As a general rule, any person who, pursuant to a legal obligation to do so, has paid, even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter.'

*Allstate Insurance Company v. Druke,* 118 Ariz. 315, 317, 576 P.2d 503 (App.1977).

■ The general rule, however, is that a guarantor is not entitled to be subrogated to the rights of a creditor until the debt has been paid in full. *Western Coach Corporation v. Rexrode,* 130 Ariz. 93, 634 P.2d 20 (App.1981); the rule is stated in 73 Am. Jur.2d Subrogation, § 26, at 618, as follows:
Until the debt is paid in full, there can be no interference with the creditor's rights or securities that might, even by a bare possibility, prejudice or in any way embarrass him in the collection of the residue of his debt .... [I]f a surety who has made partial payment should be subrogated *pro tanto,* he would occupy a

position of equality with the holder of the unpaid part of the debt, and if the property were insufficient to pay the remainder of the debt for which the surety is bound, the loss would fall proportionately on the creditor and the surety.

This court reasoned in *Western Coach v. Rexrode,* however, that this rule is quite broad and should not "apply to subrogation claims which would not impair the rights of the creditor." 130 Ariz. 97, 634 P.2d at 24. We went on to hold that a guarantor could seek reimbursement from a principal for payments due on a mobile home, even though the guarantor had not paid the debt in full, because the claim did not impair the rights of the creditor. We think the burden must, however, rest upon the party seeking to step into the seller's shoes to prove that the seller's rights will not be impaired. Had Mobile met this burden it would be entitled to subrogation. No such argument was advanced by Mobile. And, based upon the record before us, we cannot determine whether Mission's rights would be impaired. The record contains no concrete evidence of what ultimately happened to the subject mobile home after it was refurbished. Mobile's president testified at trial that he thought it had been returned to the lien holder. He also testified that Mobile, or one of its related corporations, might have purchased the mobile home. Tr. 5/22/80, pg. 59. Mobile's position for subrogation would be substantially improved if it had paid Mission in full, prepared the mobile home for sale, conducted a public auction, and were now seeking reimbursement. *See, e.g., Western Coach Corporation v. Roscoe,* 133 Ariz. 147, 650 P.2d 449 (1982). This is not, however, what happened. The facts and record compel us to rule that Mobile did not gain rights as a subrogee such that it was justified in incurring the additional expenses.[5]

We might also add, however, that even if Mobile was entitled to be subrogated to Mission's rights, the facts contained in the record are in dispute as to whether LuBean actually caused any damage to the mobile home, or absconded with furniture that was secured by the purchase agreement. It is not the prerogative of this court to weigh the evidence and determine the credibility of witnesses. *Godwin v. Farmers Insurance Company of America,* 129 Ariz. 416, 631 P.2d 571 (App.1981); *Van Emden v. Becker,* 6 Ariz.App. 274, 431 P.2d 915 (1967). Such is a matter peculiarly within the province of the trier of facts. *Brevick v. Brevick,* 129 Ariz. 51, 628 P.2d 599 (App.1981); *Nutter v. Bechtel,* 6 Ariz. App. 501, 433 P.2d 993 (1967). Since the trial court's conclusion is reasonably supported by the evidence, we would not be inclined to interfere.

Accordingly, the judgment of the trial court is hereby affirmed.

MEYERSON, P.J., and KLEIN-SCHMIDT, J., concur.

---

5. We are cognizant of the supreme court's decision in *Western Coach v. Roscoe.* However, the court's decision was reached on the basis of the law of unjust enrichment, not subrogation. Thus, we do not feel our decision conflicts with the court's opinion.

We are also cognizant of the court's ruling regarding Western's claim for unjust enrichment. In the instant case, it was uncontroverted that Mobile paid one months park rent on LuBean's behalf. Thus, LuBean might have been unjustly enriched to the extent of the amount of the park rent. However, although unjust enrichment was raised below, it was not argued on appeal. Thus, we consider the unjust enrichment argument abandoned. *DeElena v. Southern Pacific Company,* 121 Ariz. 563, 592 P.2d 759 (1979); *EFC Development Corporation v. F.F. Baugh Plumbing and Heating Inc.,* 24 Ariz.App. 566, 540 P.2d 185 (1975).