**Orris POLING and Ruth Poling, husband and wife,**

v.

**Max T. MORGAN and Jane Doe Morgan, husband and wife, Mobile Discount Corporation; Wheel Estates Corporation; Delta Service Corporation; Gulf Homes, Inc.; Western Coach Corporation; Delta Investment Corporation; E–Z Livin' Mobile Sales.**

**No. CIV 82–761 TUC ACM.**

United States District Court,
D. Arizona,
Tucson Division.

Nov. 27, 1984.

---

Barry Kirschner, Stompoly & Even, P.C., Tucson, Ariz., for plaintiffs.

Stephen C. Birringer, Phoenix, Ariz., David W. Rees, Tucson, Ariz., Richard J. Hertzberg, Phoenix, Ariz., for defendants.

## ORDER

MARQUEZ, District Judge.

This matter is before the court on defendants' Motion for Summary Judgment.

On August 2, 1973 the plaintiffs purchased a mobile home from Jackson's Mo-

bile Homes. In purchasing the home, they granted a security interest to defendant Mobile Discount Corporation in exchange for a financing agreement. Mobile Discount assigned all its rights in the security agreement to the United Bank of Arizona. In its assignment Mobile Discount guaranteed the loan.

Under the purchase agreement, plaintiffs were to make 120 monthly payments to pay off the balance of the purchase money loan. After making only 15 payments, plaintiffs abandoned the mobile home and made no further payments. Mobile Discount, as guarantor, convinced the bank not to repossess as long as Mobile Discount would make the monthly payments. Mobile Discount took possession of the mobile home.

On October 14, 1976 defendant Gulf Homes sold the mobile home to third parties. Apparently that sale was unsuccessful as defendants resold the mobile home on July 3, 1978. All of the defendant corporations are controlled by the defendant Max T. Morgan. It is not clear from the record how or when Gulf Homes acquired the mobile home from Mobile Discount. In the meantime one of the defendant corporations had continued to make the monthly installment payments.

Mobile Discount also filed suit against plaintiffs for several of the installment payments made to the bank and obtained a judgment. The record also indicates that at some point defendant once again repossessed the mobile home and either sold or leased it. Finally, on July 27, 1981 one of the defendant corporations paid off the remaining balance due to the bank. Plaintiff was sent notice and on December 11, 1981 the mobile home was sold. In March of 1982, the defendants notified plaintiff that there was no deficiency after the sale.

After the state court judgment was entered, and defendants were able to force a sale of plaintiffs automobile, defendants engaged in several collection tactics to attempt to collect the outstanding balance of the judgment.

As a result of all these incidents, plaintiffs filed suit alleging the failure to follow Arizona repossession laws under the Uniform Commercial Code, fraud, unfair collections practices under the Fair Debt Collections Practices Act, and claims under RICO.

Defendants have moved for summary judgment on all claims. They argue that the U.C.C. repossession provisions are inapplicable, that the collections practices they used were not in violation of the statute and finally, that no RICO claim has been stated.

## I.

Defendants assert two arguments in support of their contention that the U.C.C. repossession provisions are inapplicable. First, they argue that they are not "secured parties" under the code and second, that a consignment agreement permitted defendants to avoid the U.C.C. requirements.

A.R.S. § 47–9501 *et seq.* (formerly § 44–3147 *et seq* ) sets forth the procedures that must be followed when a secured party takes possession of collateral after the debtors default. Defendants argue that under Arizona law they are not secured parties. Arizona law is applicable to this portion of the case.

Defendants contend that when they repossessed the mobile home, they were acting only as guarantors. They had concededly assigned the security interest to the United Bank prior to the repossession. Under the U.C.C. once you assign all rights as a secured party, you cease to be one.

Defendants expand the argument further. They argue that after they obtained possession of the collateral, their status did not change to that of a secured party. *See, Western Coach Corp. v. Rexrode,* 130 Ariz. 93, 634 P.2d 20 (1981).

In *Western Coach,* the Arizona court of appeals held that a guarantor, who had previously assigned his security interest to a third party, did not become a secured party by the mere repossession of the col-

lateral. This is based on the state rule that one does not become subrogated to another's rights until he purchases the entire interest of the third party. *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 180, 118 P.2d 454, 455 (1941). The court concluded that the U.C.C. was inapplicable to the repossessors conduct. The debtor, at best, would have only a claim for common law conversion had the guarantors conduct been improper.

The case seems to hinge on one premise, that there can be only one secured party. The Arizona court did not cite any case in its opinion that was decided after the enactment of the code. Nor was there any consideration of the three prong statutory test for determining a secured party status § 47–9203(A).

To hold that there can only be one secured party flies in the face not only of the statutes but also modern commercial credit transactions. There was not one debt in *Western Coach* but two different ones. One debt contained substantial unaccrued interest while the other grew as this previously unrecoverable interest was paid. The fact that Arizona permits the guarantor to collect its money from the debtor before the entire debt is incurred is evidence that this is a separate debt.

█ The overall policies of the U.C.C. were designed to prevent long delays due to litigation in commercial transactions and uncertainty in the law by providing clear relatively quick remedies. It was also designed to partially protect consumers in purchase transactions. Both of these policies fail in this case as almost seven years passed from the time of plaintiffs' breach until the plaintiffs were no longer liable for the debt and yet there was no real judicial action involved during the delay.

*Western Coach* creates significant problems not only in this case but under the bankruptcy laws and may raise Due Process considerations. It is interesting to note that the defendants who advocate this interpretation of the law here, do not hesitate to take an inconsistent position, *see Mobile Discount Corp. v. LuBean*, 134 Ariz. 350,

656 P.2d 639 (1982) where the defendant here claimed that it was a secured party in a similar situation.

Proper consideration should be given to A.R.S. § 47–9203(A). The key question should have been whether the defendants were in possession of the security under an implied agreement with the debtor, the voluntary abandonment. *See* A.R.S. § 47–1201(3) (definition of agreement). It is not clear from the record whether this test would be met.

█ Nevertheless, no matter how incorrect this court believes the state court's interpretation of the state statute may be, this court is required to apply it.

█ Accordingly, since defendant Mobile Discount assigned away their secured party status before the repossession, the act of repossession as a guarantor did not alter its status. The U.C.C. provisions with regard to a secured party's repossession conduct are inapplicable. The only cause of action plaintiff may have under state law to recover for any improprieties after the repossession is a claim for conversion. No such claim is before the court.

█ As stated above, on July 27, 1981 one of the defendant corporations paid off the bank and received the assignment of the security agreement. Whether under Arizona's subrogation principles or the U.C.C., from that point on, defendant was a secured party and the Arizona U.C.C. provisions apply.

█ Defendants contend that their actions were permitted under the consignment agreement portion of the contract. This agreement appears in the middle of a 55-line paragraph of very fine print. In it, plaintiffs give defendant their power of attorney to do anything it chooses with the mobile home. All proceeds were to belong to the defendants. Plaintiffs argue that it would be improper to enforce this provision as the plaintiffs are over 70 years old and the printing consists of 55 lines packed into six and a half inches. The only words in bold print are the words "Power of Attor-

ney". It is unnecessary to decide the issues of unconscionability or of the restatement test for determining impermissibility of fine print, *Darner Motor Sales, Inc. v. Universal Underwriters Insurance*, 140 Ariz. 383, 682 P.2d 388 (1984).

A.R.S. § 47–9504 dictates the manner in which repossessed collateral must be disposed of. Under A.R.S. § 47–9501(C)(2), that provision may not be waived by the parties. To give this consignment agreement the force and effect sought by defendants would amount to such a waiver. It would also result in a waiver of other non-waivable procedures and rights dictated by § 47–9501(C). The court concludes that the consignment agreement is invalid. The defendants argue that this issue is not properly before the court. There is no merit to this argument. *See* pretrial order part V, Contested Issues of Law at (3). Although an Arizona Superior Court has upheld such language in another case, the manner in which the agreement was presented (rather than being hidden as in this case) make that case distinguishable.

Under the theories asserted based on the U.C.C., the defendants are entitled to prevail as to the occurrences from the date of repossession to July 27, 1981. The issue of whether the code provisions were complied with after that date is not before the court at this time. It will present factual issues for the jury to determine at trial. The defendants are therefore not entitled to prevail on their motion for summary judgment as to this issue.

## II.

At the hearing on this motion with regard to the Fair Debt Collections Practices Act, counsel for plaintiff abandoned several claims. Those abandoned are: all claims concerning written letters to third parties (threat to subpoena records, implied statement that third parties were lying, statements that a confidential report was being prepared); allegations of impropriety for using false names and the use of an agent to attempt settlement of the dispute.

The motion for summary judgment is granted as to these allegations. It is not clear whether the remainder of the claims are still being pursued. This matter will be resolved at the Pre-Trial Conference.

## III.

Defendants contend that there is no RICO claim because they have not been convicted of improprieties. They base this argument on a recent Second Circuit case which held such a requirement, *Sedima S.P.R.L. v. Imrex Company, Inc.*, 741 F.2d 482 (2d Cir.1984). This court in its July 8, 1983 order on a prior motion held that it was not the function of the court to limit the application of a statute "devoid of restrictions". The Second Circuit's opinion does not alter this view. The motion for summary judgment as to this cause of action is denied.

IT IS ORDERED that defendant's motion for summary judgment is granted in part and denied in part as set forth above.