829 F.2d 882
 4 UCC Rep.Serv.2d 974, 23 Fed. R. Evid. Serv. 1095
 Orris POLING and Ruth Poling, husband and wife, Plaintiffs-Appellants,
v.
Max T. MORGAN and O.D. Morgan, husband and wife; Mobile
Discount Corporation; Wheel Estates Corporation; Delta
Service Corporation; Gulf Homes, Inc.; Western Coach
Corp.; Delta Investment Corp.; E-Z Livin' Mobile Sales,
Inc.; and Mobileservice Corp., AZ Corp.; Defendants-Appellees.
 No. 85-2711.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 15, 1987.
Decided Oct. 7, 1987.
 
 L. Anthony Fines, Tucson, Ariz., for plaintiffs-appellants.
 Richard J. Hertzberg, Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before ANDERSON, SKOPIL and CANBY, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 This action arises from the sale of a mobile home, a subsequent default, and the eventual repossession and sale of the home. The district court granted partial summary judgment and entered a judgment on a jury's verdict in favor of defendants. We affirm in part, reverse in part, and remand.FACTS AND PROCEEDINGS BELOW
 
 
 2
 Orris and Ruth Poling (the Polings) purchased a mobile home from Jackson's Mobile Homes (Jackson's) in 1973. Jackson took a security interest in the mobile home which it immediately assigned to Mobile Discount Corporation (Mobile Discount), one of several corporations owned by Max Morgan. Mobile Discount thereupon assigned its rights in the security agreement to the United Bank of Arizona (Bank). In that assignment, Mobile Discount guaranteed the loan.
 
 
 3
 After making payments for fifteen months, Mr. Poling advised the Bank that he was unable to make the payments. The Polings then stopped making payments on the home and stored it on the lot of a dealer who is not a party to the case. Mobile Discount took possession of the mobile home in January 1975, removed it from the lot, and began making payments to the Bank.
 
 
 4
 In April 1975 Mobile Discount obtained a state court judgment against the Polings for two payments Mobile Discount had made to the Bank. Subsequently, the County Sheriff took and sold the Polings' automobile to satisfy a portion of the judgment.
 
 
 5
 Although title to the mobile home remained in the Polings' name, neither Morgan nor any of his corporations (defendants) notified the Polings of their actions with the mobile home. Mobile Discount first transferred the possession of mobile home to another Morgan corporation, Gulf Homes. In August 1976 Gulf Homes sold the mobile home on a contract for title to the Fletchers. After the Fletchers defaulted on their payments, Gulf Homes repossessed the mobile home and sold it in a similar manner to the Kennings. The Kennings moved the mobile home to Bouse, Arizona, near the California border. The Kennings were still living in the home and making payments to Gulf Homes at the time of trial.
 
 
 6
 In July 1981 another Morgan corporation, defendant Wheel Estate, purchased the Poling contract, including the security interest, from the Bank. Although the mobile home remained in Bouse, Wheel Estate published notice of a public repossession sale which specified the location of the mobile home as Phoenix, Arizona. The Polings were notified of the sale but did not attend. On December 11, 1981 Gulf Homes purchased the mobile home.
 
 
 7
 The Polings filed this action against Morgan and his corporations, alleging violations of the Arizona and federal RICO statutes, the Arizona Uniform Commercial Code, and the federal Fair Debt Collection Practices Act. In December 1984 the district court granted partial summary judgment, holding that Mobile Discount was not a secured party under the Arizona Uniform Commercial Code and therefore not subject to the restrictions of Ariz.Rev.Stat. Secs. 47-9501--47-9507 (West Supp.1986) at the time it took possession of the mobile home. Poling v. Morgan, 598 F.Supp. 686 (D.Ariz.1984).
 
 
 8
 The next month the Polings moved to amend the pleadings to allege conversion. The court denied the motion. It later rejected the federal claims, and trial was held in September 1985 on the state law claims. The court denied the Polings' motion for directed verdict on whether the repossession and sale conducted by Wheel Estate violated the Polings' rights as debtors. See Ariz.Rev.Stat. Secs. 47-2706(D)(3), 47-9503, 47-9504 (West Supp.1986). After being instructed that Morgan repossessed the mobile home legally, the jury returned a verdict in favor of the defendants on all counts. The district court denied the Polings' motion for a new trial and for a judgment notwithstanding the verdict.
 
 
 9
 The Polings contend on appeal that the district court (1) erred in ruling that Mobile Discount was not subject to the restrictions of Ariz.Rev.Stat. Secs. 47-9501--47-9507 at the time it took possession of the mobile home; (2) erroneously instructed the jury that a guarantor has the right to repossess collateral and be reimbursed for repossession and refurbishing costs; (3) abused its discretion in denying their motion to amend the complaint to add a claim for conversion; (4) erroneously denied their motion for a directed verdict; and (5) abused its discretion in excluding proof of other fraudulent acts of the defendants as evidence of a scheme or artifice to defraud.
 
 DISCUSSION
 I.
 
 10
 The district court held that Mobile Discount was not acting as a secured party when it took possession of the mobile home. We review a grant of summary judgment de novo. See Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986).
 
 
 11
 At the time of the Polings' default on the loan, the Bank had a secured interest in the mobile home. Mobile Discount, under the terms of the guarantee, was obligated on demand to pay the balance of the loan to the Bank. As guarantor, Mobile Discount could become a secured party if it received a transfer of the collateral from the Bank or if it was subrogated to the secured party's rights. See Ariz.Rev.Stat.Ann. Sec. 47-9504(E) (1986). Neither of these requirements was met. Mobile Discount took the collateral directly from the Polings instead of waiting for the Bank to repossess the mobile home. Mobile Discount was not subrogated to the rights and duties of the Bank because it had not paid off the entire balance of the debt. See Western Coach Corp. v. Rexrode, 130 Ariz. 93, 96-97, 634 P.2d 20, 24 (Ct.App.1981). The district court was correct in holding that Mobile Discount was not a secured party at the time the Polings defaulted on the loan.
 
 II.
 
 12
 The Polings object to two of the instructions submitted to the jury. One instruction stated that "[a] guarantor such as Mobile Discount who acquires the collateral, the mobile home, before paying off the entire debt is not a secured party under Arizona law and cannot hold a repossession sale." The second instruction stated that "[u]nder the facts of this case, the guarantor, Mobile Discount, had the right to take possession of the mobile home and attempt to preserve and protect it. The guarantor is entitled to be reimbursed for any expenses incurred in preserving the mobile home...." The Polings argue that the instructions set out the law incorrectly by inferring that the guarantor here could repossess a mobile home and be reimbursed for the costs of taking possession, storage, and refurbishment. The propriety of a jury instruction is a question of law that we review de novo. 999 v. C.I.T. Corp., 776 F.2d 866, 871 (9th Cir.1985).
 
 
 13
 When Mobile Discount assigned the security interest to the Bank it guaranteed full payment of the debt. Because the Polings were bound to pay the debt, Mobile Discount had an obligation to pay the debt if called upon to do so. See Howard v. Associated Grocers, 123 Ariz. 593, 595, 601 P.2d 593, 595 (1979) ("unless the debtor himself is bound to pay, the guarantor is not bound"); Dykes v. Clem Lumber Co., 58 Ariz. 176, 181, 118 P.2d 454, 455 (1941) ("If there is no primary liability ..., there can be no contract of guaranty."). Mobile Discount was therefore a guarantor of the Polings' contract.
 
 
 14
 We find no Arizona law which indicates that a guarantor has a right to take possession of the collateral before it has made full payment and become subrogated to the rights of the secured party under Ariz.Rev.Stat. Sec. 47-9504(D). The defendants' reliance on Western Coach v. Roscoe, 133 Ariz. 147, 650 P.2d 449 (1982), is misplaced. In Roscoe the guarantor repossessed a mobile home at the request of the possessor and then sued to recover the sums it paid on the principal's behalf. Id., 133 Ariz. at 150, 650 P.2d at 452. These sums included the guarantor's costs in refurbishing the mobile home. Id. Because the guarantor's right to take possession of the mobile home was not at issue in the case, Roscoe is not helpful.
 
 
 15
 The law is clear that a guarantor who becomes liable for the debt of a principal has three options to recover the amount paid under the guaranty. See Howco Leasing Corp. v. Alexander Dispos-Haul Systems, Inc., 36 B.R. 612, 616 (D.Or.1983). The guarantor may sue for exoneration or reimbursement. See J. Elder Stearns Law of Suretyship Sec. 11.35 at 505 (5th ed. 1951). These causes of action arise immediately upon payment of the principal's obligation. Dykes, 58 Ariz. at 180, 118 P.2d at 455. Alternatively, the guarantor may pay the debt in full and thereby become subrogated to the rights of the creditor. See Howco Leasing Corp., 36 B.R. at 616. Once subrogated to the rights of the creditor, the guarantor may take possession subject to the restrictions imposed on secured parties. See Ariz.Rev.Stat. Sec. 47-9504(E). Full payment by the guarantor is required to protect the creditor from having its rights against the debtor impaired by the guarantor's exercise of its rights. Rexrode, 130 Ariz. at 97, 634 P.2d at 24. If the guarantor could take possession without paying off the debt, the creditor's right of repossession would be impaired.
 
 III.
 
 16
 The Polings contend that the district court erred in failing to permit them to amend their complaint to include a claim for conversion of the mobile home. They moved to amend the complaint shortly after the district judge concluded that "[t]he only cause of action plaintiff may have under state law to recover for any improprieties after the repossession is a claim for conversion." Poling, 598 F.Supp. at 689.
 
 
 17
 Leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). The denial of leave to amend pleadings after a responsive pleading has been filed is reviewed for an abuse of discretion. California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.1987). The denial of a motion to amend must be "strictly" reviewed in light of the strong policy permitting amendment. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.1986). The factors we consider before deciding whether to deny a motion for leave to amend pleadings are undue delay, bad faith or dilatory motive, futility of amendment, and undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); California Architectural Bldg. Prods., 818 F.2d at 1472.
 
 
 18
 We hold that it was an abuse of discretion to deny the motion to amend the complaint. The underlying facts regarding the conversion claim were pleaded in the initial complaint. The Polings acted promptly in moving to amend. Little if any delay could have resulted because discovery had covered the issues necessary to a conversion claim.
 
 
 19
 The defendants argue that denial of the motion to amend was proper because amendment would have been futile. They argue that because they had a right to take possession of the mobile home, there could be no conversion. In Mobile Discount Corp. v. Schumacher, 139 Ariz. 15, 676 P.2d 649 (Ct.App.1983), however, the Arizona Court of Appeals upheld a conversion claim based on analogous facts. In that case the plaintiffs voluntarily relinquished possession on the understanding that they would be relieved of making further payments. Id., 139 Ariz. at 17, 676 P.2d at 652. Mobile Discount later informed the plaintiffs that they were still liable for payments but did not tell them of their right to possession of the mobile home or its location. Id. The Polings may have been under a similar misconception.
 
 
 20
 Alternatively, the defendants argue that amendment would be futile because a claim for conversion would be barred by the statute of limitations. The statute of limitations for conversion is two years. See Ariz.Rev.Stat.Ann. Sec. 12-542 (West Supp.1986). The defendants assert that because they took possession of the mobile home in 1975 and the Polings did not bring their action until 1982, the statute expired long ago. The statute of limitations may have been tolled, however, because the Polings claim they did not and could not have reasonably discovered that the defendants had possession of the home until 1981 when Morgan published notice of the repossession sale. See Davis v. Dow Chemical Co., 819 F.2d 231, 233 (9th Cir.1987) ("Arizona courts have adopted the discovery rule for ... tort actions"); Kenyon v. Hammer, 142 Ariz. 69, 76 & n. 6, 688 P.2d 961, 968 & n. 6 (1984) ("the discovery doctrine has generally been adopted and applied to tort actions in Arizona").
 
 
 21
 Finally, the defendants contend that the court properly denied the motion because the additional claim would have caused unnecessary delay. They point, however, to nothing that would have caused delay. Little if any additional discovery was necessary, and whatever discovery was necessary could have been accomplished without altering the trial date.
 
 IV.
 
 22
 The Polings also appeal the district court's denial of their motion for a directed verdict. They contend that the defendants' failure to disclose the location of the mobile home in its notice of repossession sale entitles them to statutory damages. See Ariz.Rev.Stat.Ann. Secs. 47-9504(A), 47-2706(D)(3), 47-9507. We review the district court's decision concerning a directed verdict de novo. West American Corp. v. Vaughan-Bassett Furniture Co., 765 F.2d 932, 934 (9th Cir.1985). "A directed verdict may be granted pursuant to Fed.R.Civ.P. 50(a) when, viewing the evidence in a light most favorable to the nonmoving party, the testimony and all the inferences that the jury could justifiably draw therefrom are insufficient to support any other finding." Los Angeles Memorial Coliseum Comm'n v. NFL, 726 F.2d 1381, 1387 (9th Cir.), cert. denied, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984).
 
 
 23
 A notice of public sale must state "the place where the goods are located and provide for their reasonable inspection by prospective bidders." Ariz.Rev.Stat.Ann. Sec. 47-2706(D)(3). The collateral need not be present at the repossession sale for the repossession sale to be valid. Gulf Homes, Inc. v. Goubeaux, 124 Ariz. 142, 144, 602 P.2d 810, 812 (1979). The test is whether every aspect of the disposition is commercially reasonable. Id. The determination of what is reasonable is generally a question of fact. Id.
 
 
 24
 Viewing the evidence in the light most favorable to the defendants, we find no evidence from which a jury could have found that the sale was held in a commercially reasonable manner. The notice of sale stated that "information/viewing" of the mobile home would be at the defendants' office in Phoenix even though the mobile home was actually in Bouse, approximately 150 miles away. Thus the defendants neither stated where the mobile home was located nor did they provide for reasonable inspection by prospective bidders. Defendants' witness explained why it might be commercially reasonable to hold a repossession sale in a location other than where the vehicle was situated and why a dealer might prefer to announce the location of the collateral only to interested parties. The defendants have presented no testimony, however, from which a jury could infer that it was commercially reasonable for the notice of sale to state that the collateral could be viewed in Phoenix when it was located approximately 150 miles away.
 
 
 25
 We reverse on this issue and remand for a determination of statutory damages.
 
 V.
 
 26
 The Polings also appeal the district court's decision to exclude proof of other fraudulent acts of the defendants as evidence of a scheme or artifice to defraud. Under the Arizona RICO statute, Ariz.Rev.Stat. Sec. 13-2301(D)(4)(t) (West), the Polings were required to prove that (1) the defendants obtained some benefit; (2) they obtained the benefit knowingly; (3) they did so by means of false or fraudulent pretenses, representations, promises, or material omissions; and (4) they did so pursuant to a scheme or artifice to defraud. See State v. Suarez, 137 Ariz. 368, 369, 670 P.2d 1192, 1198 (Ct.App.1983). The Polings sought to establish the defendants' evil intent by introducing evidence of other schemes in which the defendants defrauded buyers of mobile homes.
 
 
 27
 Fed.R.Evid. 404(b) permits the admission of evidence of prior bad acts to prove intent. We review the district court's decision for an abuse of discretion. See Heath v. Cast, 813 F.2d 254, 259 (9th Cir.1987), petition for cert. filed. Even if the evidence is admissible under Fed.R.Evid. 404(b), it may be excluded under Fed.R.Evid. 403 if its admission would cause undue delay. Here the district court found that admission of the evidence would result in undue delay. Although the evidence may have been probative on the defendants' specific intent to defraud, see United States v. Diggs, 649 F.2d 731, 737 (9th Cir.) (evidence of prior fraudulent acts admissible to show intent to defraud), cert. denied, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981), admission of the evidence may have caused considerable delay. It was therefore not an abuse of discretion to exclude the evidence under Fed.R.Evid. 403.
 
 CONCLUSION
 
 28
 We affirm the district court's holding that the defendants did not act as a secured party until they became subrogated to rights of the Bank and its ruling excluding prior bad acts of the defendants. We reverse the district court's denial of a motion for a directed verdict on the issue of the defective repossession sale. Because the jury instructions were in error, we reverse the final judgment and remand to permit amendment of the complaint and a new trial. Costs are awarded to plaintiff.
 
 
 29
 AFFIRMED in part, REVERSED in part, and REMANDED.