Opinion, 270 F.R.D. 488, modified.

Quiller BARNES, Plaintiff,

v.

**AT & T PENSION BENEFIT PLAN–NONBARGAINED PROGRAM,** Defendant.

**No. CV 08–04058 MHP.**

United States District Court, N.D. California.

March 1, 2011.

Bruce Frank Rinaldi, R. Joseph Barton, Robyn Swanson, Cohen Milstein Sellers & Toll PLLC, Washington, DC, Michelle Lee Roberts, Claire Kennedy–Wilkins, Cassie Springer–Sullivan, Springer–Sullivan & Roberts LLP, Oakland, CA, for Plaintiff.

### *MEMORANDUM & ORDER*

**Re:** Motion to Modify the Court's Class
 Certification Order; Motion to
 Amend the Complaint.

MARILYN HALL PATEL, District Judge.

In this action, plaintiff Quiller Barnes ("Barnes"), on behalf of himself and all others similarly situated, alleges that defendant

AT & T Pension Benefit Plan–Nonbargained Program ("AT & T") wrongfully denied him pension benefits to which he was entitled. Barnes' amended complaint asserts three causes of action under the Employee Retirement and Income Security Act ("ERISA") for: (1) failing to provide adequate notice of the reasons for benefit denial, 29 U.S.C. § 1133(1); (2) failing to pay benefits due, 29 U.S.C. § 1132(a)(1)(B); and (3) violating ERISA's anti-cutback provision, 29 U.S.C. § 1054(g). Before the court are plaintiff's motion to modify the court's September 1, 2010 class certification order, docket no. 176 (September 2010 Order), and plaintiff's motion to file a second amended complaint ("SAC"). Having considered the parties' arguments and submissions and for the reasons stated below, the court enters the following memorandum and order.

*BACKGROUND*

The alleged facts, which the court previously recounted, *see Barnes v. AT & T Pension Ben. Plan,* No. 08–c–04058, 2010 WL 1340543, at *1–2 (N.D.Cal. Apr. 5, 2010), and about which there is little or no dispute, are as follows.

Barnes worked for Pacific Bell Telephone Company ("Pacific Bell") and Pacific Bell's successors-in-interest from 1973 until October 29, 1996, and then again from May 1, 1997 to June 17, 2003. During all periods of time in which he was employed by Pacific Bell, Barnes was enrolled in the company's pension plan for salaried employees. Upon the completion of his first stint with Pacific Bell ("the first retirement"), Barnes had the option of receiving his accrued pension benefits, called an Accelerated Transition Benefit ("ATB"), in either a lump sum or as an annuity. Regardless of his choice, however, Barnes' ATB was subject to a discount because he had not yet been employed with Pacific Bell for thirty or more years (he had only been employed with Pacific Bell for approximately twenty-four years) and had not yet reached the age of fifty five (he was forty-eight years and five months old). Barnes elected for a lump sum payment of $309,878.38, which represented a 16.33% discount from the full value of his ATB.

Approximately six months later, Barnes began his second term of employment with Pacific Bell, when he was rehired in the same position on May 1, 1997. As stated above, Barnes remained in that position until June 17, 2003, when he again terminated his employment ("the second retirement"). At least part of Barnes' justification for returning to Pacific Bell was to "bridge" his service. Under the explicit terms of the pension plan, an employee who terminated employment on or after March 22, 1996, and was rehired on or before October 31, 1997, could bridge his service, that is, add to his duration of employment for the purpose of pension benefit calculations, by remaining employed with the company for an additional five-year period. Once that five-year term is met, the employee's additional service, including the five-year bridging period, is added to his prior service. Although the parties heavily dispute the issue, Barnes alleges that, under the terms of the pension plan, once an employee who accepted a discounted, lump-sum ATB successfully bridges his employment, the employee is entitled to a recalculated or redetermined ATB that accurately reflects the employee's additional years of service and increased age. This redetermined ATB, which would be offset by any ATB payments previously received by the employee, would compensate an employee for any discount that may have been applied to his pension benefits at the time of his first retirement.

Upon his return to the company, Barnes began receiving new statements reflecting the balance of his pension account. His first statement, which he received on June 30, 1997, showed an ATB account balance of $222,414.83. Barnes continued to receive pension statements, reflecting an ever increasing ATB balance through May 2000, when the statement indicated that his ATB account was valued at $342,267.15. Barnes assumed that these statements reflected the value of the redetermined ATB to which he would be entitled once he bridged his service. After May 2000, his statements no longer included any information regarding an ATB.

Because Barnes, during his second stint with Pacific Bell, remained with the company for more than five years, he bridged his

service. At the time of his second retirement, he had been with Pacific Bell for more than thirty years and had reached the age of fifty five. Accordingly, had he not left the company for an approximately six month period, he would have been entitled to a full, non-discounted ATB.

When Barnes received his second retirement pension package, it did not include any additional benefits to reflect his bridged service. Thereafter, Barnes submitted a complaint with AT & T, contending that he was entitled to additional benefits. AT & T denied Barnes' complaint, whereupon Barnes appealed the denial through AT & T's internal review process. Barnes appeal was denied on January 18, 2005. After Barnes' appeal was denied, Barnes filed this action on January 22, 2008.

On June 14, 2010, Barnes moved to have his second and third causes of action certified as class actions. On September 1, 2010, the court granted plaintiff's motion, defining the class as follows:

Participants in the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees ("PTG Pension Plan") (n/k/a the AT & T Pension Benefit Plan–NonBargained Program):

(a) who terminated their employment on or after March 22, 1996 with a company that participated in the PTG Pension Plan;

(b) who were eligible for an Accelerated Transition Benefit ("ATB"), which, because they had not attained the requisite age or years of credited service, was subject to an ATB Discount;

(c) who elected to receive their discounted ATB as a lump-sum payment;

(d) who were subsequently rehired by a company that participated in the PTG Pension Plan on or before October 31, 1997, and worked at least five additional years; and

(e) either (i) at their next termination, did not have their ATB adjusted to reflect their age and term of employment at their next termination of employment or (ii) are still employed at a Participating Company,

or the beneficiaries of any of the persons described above.

Excluded from the class are any officers and directors of AT & T, Inc. or subsidiary companies owned directly or indirectly by AT & T (including Pacific Telesis, Pacific Bell and Nevada Bell) and any employees who had any decision-making or administrative authority relating to the interpretation of the PTG Pension Plan.

Plaintiff now moves to amend the court's class certification by altering the class definition. Secondly, plaintiff moves to file a SAC by adding one new claim on behalf of the class pursuant to ERISA § 203(a), 29 U.S.C. § 1103(a), which prohibits the forfeiture of an accrued benefit and one individual claim pursuant to ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), which requires any alternative form of benefit distribution to be no less than the actuarial equivalent of the annual benefit commencing at normal retirement age.

## LEGAL STANDARD

### I. Modifying a Class Certification

■■■ Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) the district court may alter or amend a class certification order before final judgment. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974 983 (9th Cir.2007). "Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir.2010) (internal quotation marks and citations omitted).

### II. Amending a Complaint

■■■ A party may amend a pleading once as a matter of course and thereafter only by consent of the opposing party or by leave of the court. Fed.R.Civ.P. 15(a)(2). Leave should be freely given when justice so requires. *Id.* In determining whether to grant leave to amend, the court considers five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint.

*Nunes v. Ashcroft,* 375 F.3d 805, 808 (9th Cir.2004). Not all of the factors merit equal consideration; prejudice is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001). The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be granted with "extraordinary liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990); *Poling v. Morgan,* 829 F.2d 882, 886 (9th Cir.1987).

## DISCUSSION

### I. *Motion to Modify Class Certification*

Plaintiff moves to include deferred annuitants in the class. Plaintiff alleges that defendant has failed to interpret the Plan to provide the full benefits described in section 3.4(d)(3) to either lump-sum recipients, such as plaintiff Barnes, or deferred annuitants. Section 3.4(d)(3) states in relevant part:

The following provisions apply to former Employees who are rehired in the period beginning March 22, 1996 and ending October 31, 1997. If the Employee's prior Termination of Employment occurs on or after March 22, 1996, the Employee's Plan benefit at the Annuity Start Date following the Employee's next termination of Employment will be determined as follows . . .

(3) If the Employee was receiving, or was eligible to receive, a monthly pension under the accelerated transition benefit formula at his or her prior Termination of Employment, the Employee's Plan benefit at the Annuity Start Date(s) following his or her next Termination of Employment will be equal to (x) plus (y) where:

(x) is the monthly benefit payable at the Employee's prior Termination of Employment under Section 5. 1, except that if the prior benefit was subject to an age discount under Section 5.2, and the Em-

ployee's service is bridged under Section 7.4(a), the benefit will be adjusted to reflect the Employee's age and Term of Employment; *and*

(y) is the monthly cash balance benefit under Section 4.5(b) based on allocations to the Employee's Account from the Employee's rehire date to the Annuity Start Date that applies to the cash balance benefit. (Emphasis added).

In its September 2010 Order, the court stated that, "the primary question posed by [plaintiff's] complaint is whether, under the terms of the PTG Pension Plan, once an employee who accepted a discounted ATB successfully bridges his employment, the employee is entitled, upon his or her second retirement, to a recalculated or redetermined ATB that accurately reflects the employee's additional years of service and increased age." September 2010 Order at 5–6. The recalculated or redetermined ATB is encompassed in the "x" value as set forth in section 3.4(d)(3) of the Plan. The court excluded annuitants from the class definition because defendant's declarant averred that "under subsection 3.4(d)(3), employees who were receiving a monthly ATB annuity [immediate annuitants] (or were eligible to receive a monthly ATB annuity but who had not yet commenced its distribution [deferred annuitants] ) [would] have the annuity re-determined based on their additional years of service and age, assuming that their service has been bridged under Section 7.4." Docket No. 86 (Francis Decl.) ¶ 4. In other words, deferred annuitants are eligible to receive the "x" value, unlike lump-sum recipients who are eligible to receive only the "y" value as set forth in subsection 3.4(d)(3). Thus, for the purposes of eligibility for ATB redetermination (the "x" value) after successful bridging of service, lump-sum ATB recipients are treated differently from annuity ATB recipients, although both types of participants are theoretically subject to defendant's discount policy under section 5.2 upon first retirement.[1] In excluding annuitants from the

1. Under the Plan, any participant who terminated employment before reaching the age of 55 or before having worked for thirty (30) years was eligible to choose the higher of a discounted ATB or a Cash Balance benefit. Subsection 5.2.

Moreover, for the purposes of determining whether a discount should be assessed, the Plan does not appear to differentiate between participants who elected to receive a lump-sum ATB

class then, the court reasoned that if individuals who accepted a discounted ATB as an annuity were included in the class, this action would no longer satisfy Rule 23(b)(1) or (b)(2). Their inclusion in the Class would mean that some of the class members (annuitants) would not be affected by the result of this litigation and that AT & T would not have acted or refused to act on grounds common to the class as a whole. September 2010 Order at 5–6.

Plaintiff now argues that the premise upon which the court rested the exclusion of deferred annuitants from the class is no longer valid after defendant's clarification of its position with respect to section 3.4(d)(3). Plaintiff points to recent testimony by defendant's declarant that with respect to the Plan, AT & T interprets section 3.4(d)(3) as granting *only* the "x" value instead of "x" *plus* "y" to deferred annuitants who have successfully bridged service. Docket No. 200 (Roberts Decl.), Exh. 2 (Francis Depo.) at 66. According to defendant's declarant, section 3.4(d)(3) prescription of "x" *plus* "y" applies *only* to immediate annuitants.[2] *Id.* at 99:8–10.

At the hearing, defendant's counsel confirmed that AT & T does in fact interpret the Plan in this manner. According to the defendant, section 3.4(d)(3) applies as follows: (1) lump-sum ATB recipients, upon successful bridging, are eligible to receive *only* the "y" value, (2) deferred annuitants, upon successful bridging, are eligible to receive *only* the "x" value and (3) immediate annuitants are eligible to receive "x" *plus* "y". Consequently, for the purposes of defining the class, plaintiff argues that deferred annuitants are treated the same as lump-sum benefit recipients insofar as defendant denies to both types of pension recipients the benefit of "x" plus "y" as enumerated in section 3.4(d)(3) of the Plan. This slightly shifts the focus of the litigation to the proper interpretation and application of section 3.4(d)(3) in its entirety, rather than its previous focus on the proper interpretation and application of the "x" value within section 3.4(d)(3), namely the redetermination of the ATB benefit upon successful bridging. Accordingly, the parties' dispute now centers on the correct and lawful interpretation of 3.4(d)(3) as a whole, and plaintiff contends that the class definition order must change as a result.

In coming to a reasonable conclusion with respect to plaintiff's present motion to modify the class definition, the court must, albeit reluctantly at this stage of the action, engage in some construction of the language of section 3.4(d)(3), if only for the purpose of determining whether the inclusion of deferred annuitants in the class comports with Rule 23.

■ The first sentence of section 3.4(d)(3) states:

> If the Employee was receiving, *or was eligible to receive,* a monthly pension under the accelerated transition benefit formula at his or her prior Termination of Employment, the Employee's Plan benefit at the Annuity Start Date(s) following his or her next Termination of Employment will be equal to (x) *plus* (y) . . . (Emphasis added).

On its face, section 3.4(d)(3) applies to any employee who "was eligible to receive" an immediate annuity. Defendant does not dispute that employees who elected to receive a lump-sum cashout or a deferred annuity were, upon first retirement, eligible to receive an immediate annuity, notwithstanding their subsequent choice to accept their pension benefit as a lump-sum cashout or as a deferred annuity. Francis Depo. at 99:2–100:3. Moreover, the plain language of section 3.4(d)(3) does not specify that section 3.4(d)(3) *does not* apply to employees who were eligible to receive an immediate annuity but ultimately elected to receive a lump-sum cashout or a deferred annuity.[3] Notwith-

---

and those who chose to receive an annuity, either immediate or deferred. *Id.*

**2.** It is worth noting that defendant has not identified any employees who elected to receive an immediate annuity upon first retirement. So, as a practical matter, section 3.4(d)(3) applies to no one.

**3.** "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) *construes provisions of the plan in a way that conflicts with the plain language of the plan,* or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir. 2005) (emphasis added).

standing the plain language, however, defendant interprets section 3.4(d)(3)'s prescription of "x" plus "y" as applicable only to immediate annuitants and as *inapplicable* to lump-sum recipients and deferred annuitants. *Id.* The court concludes that the plain language of section 3.4(d)(3) suggests otherwise and a disposition in favor of plaintiff would consequently apply with equal force to both lump-sum recipients, such as Barnes, as well as deferred annuitants. Accordingly, the court turns next to defendant's Rule 23 objections.

Defendant argues that the addition of deferred annuitants to the class would defeat the commonality and typicality requirements of Rule 23. A party seeking to certify a class must satisfy the four prerequisites enumerated in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements of Rule 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed.R.Civ.P. 23(a). Defendant argues that even if subsection 3.4(d)(3) applies with equal force to lump-sum recipients and deferred annuitants, including deferred annuitants in the class would defeat the commonality and typicality requirements set forth in Rule 23.

### A. *Commonality*

To fulfill the commonality prerequisite of Rule 23(a)(2), a plaintiff must establish that there are questions of law or fact common to the class as a whole. Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir.1964). Individual variation among class members' questions of law

and fact does not defeat underlying legal commonality; "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). "The commonality test is 'qualitative rather than quantitative'—one significant issue common to the class may be sufficient to warrant certification." *Dukes,* 603 F.3d at 599. In the Ninth Circuit, the requirements of Rule 23(a)(2) are to be construed "permissively." *Id.* (citing *Hanlon,* 150 F.3d at 1019).

Here, the main issue to be determined is whether section 3.4(d)(3)'s allocation of "x" plus "y" upon successful bridging of service applies to *all* employees *who were eligible to receive* an immediate annuity. As discussed above, the plain language of the Plan suggests that all employees who were eligible to receive an immediate annuity upon first retirement, regardless of their subsequent election to receive a lump-sum cashout or deferred annuity, are eligible to receive the benefit of "x" plus "y" upon successful bridging of service. Defendant's contrary construction of section 3.4(d)(3) is that it applies neither to lump-sum recipients nor deferred annuitants. Accordingly, the legal issue here is the appropriate construction of the plan under ERISA and is identical as between lump-sum recipients and deferred annuitants. Moreover, the factual predicates as between lump-sum recipients and deferred annuitants, although varied to the extent that the former currently receives only the "x" value and the latter receives only the "y" value, are common in that neither received "x" plus "y" as plaintiff argues both should. Thus, Barnes' claim would remain common with respect to the newly constituted class.

### B. *Typicality*

The typicality requirement necessitates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive

with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff challenges AT & T's interpretation of 3.4(d)(3) with respect to lump-sum discounted ATB recipients, like himself, and deferred annuitants. The gravamen of plaintiff's argument here is that any employee who was eligible to receive an immediate annuity should, upon successful bridging, receive the full benefit of "x" plus "y" as set forth in section 3.4(d)(3). Barnes' claims are reasonably coextensive with those of deferred annuitants because currently, per defendant's interpretation of 3.4(d)(3), neither lump-sum recipients, such as Barnes, nor deferred annuitants are eligible to receive the full benefit of section 3.4(d)(3). Thus, Barnes' claim would be typical of the newly constituted class.[4]

In sum, the addition of deferred annuitants comports with the disputed requirements of Rule 23, and plaintiff's motion to modify the court's class certification order is GRANTED.[5]

### C. *Redefining the Class*

Given the conclusions above, the court now redefines the class as follows:

Participants in the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees ("PTG Pension Plan") (n/k/a the AT & T Pension Benefit Plan—Non-Bargained Program):

(a) who terminated their employment on or after March 22, 1996 with a company that participated in the PTG Pension Plan;

(b) who were eligible for an Accelerated Transition Benefit ("ATB"), which, because they had not attained the requisite age or years of credited service, was subject to an ATB Discount;

(c) who were subsequently rehired by a company that participated in the PTG Pension Plan on or before October 31, 1997, and worked at least five additional years; and

(d) either (i) at their next termination, did not have their benefit calculated to include both an ATB adjusted to reflect their age and term of employment and a cash balance benefit (or a Career Average Minimum benefit) based on allocations to their account since rehire as set forth in section 3.4(d)(3) of the PTG Pension Plan or (ii) are still employed at Participating Company,

or the beneficiaries of any of the persons described above.

Excluded from the class are any officers and directors of AT & T, Inc. or subsidiary companies owned directly or indirectly by AT & T (including Pacific Telesis, Pacific Bell and Nevada Bell) and any employees who had any decision-making or administrative authority relating to the interpretation of the PTG Pension Plan.

### II. *Motion to Amend the Complaint*

Plaintiff's current amended complaint ("AC") asserts three causes of action under the ERISA for: (1) failing to provide adequate notice of the reasons for benefit denial, 29 U.S.C. § 1133(1); (2) failing to pay benefits due, 29 U.S.C. § 1132(a)(1)(B); and (3) violating ERISA's anti-cutback provision, 29 U.S.C. § 1054(g). The court previously certified the latter two counts as class actions. Plaintiff moves to file a second amended complaint. Defendant does not oppose the substance of plaintiff's proposed second amended complaint ("PSAC"), but defendant

---

4. Nonetheless, the court encourages plaintiff to identify as a class representative a class member who elected to receive a deferred annuity. Although at this stage of the litigation, the court concludes that Barnes is an appropriate class representative, the issues, especially with respect to the calculation of appropriate damages should plaintiff prevail on the merits or with respect to the negotiation of an appropriate settlement, may warrant the inclusion of such a class representative.

5. Although defendant does not argue that the addition of deferred annuitants would not comport with the adequacy requirement of Rule 23(a)(4), the court concludes that Barnes remains an adequate representative for the class. Defendant makes no argument with respect to Rule 23(b), but the court concludes that the inclusion of deferred annuitants in the class does not alter the court's previous ruling with respect to Rule 23(b)(1) and Rule 23(b)(2). *See* September 2010 Order at 10–11.

does object to its form. Specifically, defendant contends that the plaintiff's PSAC inappropriately commingles a new claim with Count II, which the court has previously certified. Defendant also contends that the fact that plaintiff has changed Count III of the AC to Count IV in the PSAC will result in confusion because Count III in the AC was a certified class claim. Accordingly, defendant contends that renaming it as Count IV will cause confusion as to which Count has been certified and which has not. The court considers each objection in turn.

### A. Changes to Count II

■ Plaintiff's PSAC amends Count II to include new allegations that AT & T's current interpretation causes the Plan to violate sections 203(a) and 204(c)(3) of ERISA. Docket No. 193 (Swanson Decl.), Exh. B (PSAC) ¶¶ 156–59. Defendant does not object to this change. Proposed Second Amended Count II, however, also includes the provision of a "Special ATB" as an alternative remedy to a redetermined ATB. PSAC ¶ 155. The parties agree that the Special ATB option was added to the Plan in 1999, after plaintiff was rehired but before he had successfully bridged his service. Plaintiff alleges that according to the Plan, the Special ATB was available to a participant who was eligible for an ATB as of January 1, 1999 and who was employed on that date. PSAC ¶ 62. For eligible employees, the Special ATB was calculated by taking the present value of the participant's ATB on January 1, 1999, determined as if the participant had retired on that date and elected to receive a lump-sum ATB. Id. ¶ 63. That value was then credited with a full month's interest for each full or partial month between January 1, 1999 and December 31, 2001, that the participant was employed before terminating employment. Id. Plaintiff asserts that as of January 31, 2002, the Plan provided that after retirement, a participant was entitled to receive the greater of the participant's Special ATB benefit, redetermined ATB or Cash Balance Account. Id. ¶ 65. Ultimately,

plaintiff argues that the option of a the Special ATB should be considered when calculating a class member's remedy, and plaintiff asserts that this option applies to all members of the class. Id. ¶ 68.

Defendant contends that a Special ATB is unrelated to the class claim asserted in Count II because no participant who retired, elected a lump-sum discounted ATB and was subsequently rehired within the dates enumerated in subsection 3.4(d)(3) had a vested ATB available on January 1, 1999. Because the Special ATB, as set forth in the Plan, represents a different option for the calculation of benefits, Barnes may amend his complaint but must plead his entitlement to the Special ATB as a separate count.[6]

Lastly, plaintiff shall amend the complaint to comport with the inclusion of deferred annuitants in the class.[7]

### B. Renumbering of Counts

Count III in the PSAC is a new claim alleging that the Plan violates sections 203(a) and 204(c)(3) of ERISA to the extent that defendant's interpretation of the Plan is correct. Defendant objects to the numbering of this Count as it bumps the previously class-certified claim from Count III to Count IV, which defendant contends may result in confusion. Given that the substance of the counts certified in the September 2010 Order remain clear, this argument is unpersuasive. There would be minimal, if any, prejudice to defendant to renumber the class claim as Count IV. Accordingly, plaintiff is granted leave to file its Second Amended Complaint as proposed.

### CONCLUSION

Plaintiff's motion to modify the court's order on class certification is GRANTED. Plaintiff's motion to file a SAC is GRANTED. Plaintiff shall file his SAC within fourteen (14) days of the date of this order.

IT IS SO ORDERED.

---

6. With respect to any new counts that plaintiff raises on behalf of the class, plaintiff must move to certify such new counts as class claims.

7. Specifically, plaintiff shall amend paragraph 153 and other relevant paragraphs to reflect the court's conclusions above.